2004-NMCA-125

100 P.3d 200

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Conrado RODRIGUEZ, Defendant–
Appellant.**

**No. 23,455.**

Court of Appeals of New Mexico.

July 23, 2004.

Certiorari Granted, No. 28,867,
Oct. 19, 2004.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellee.

John B. Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, for Appellant.

OPINION

PICKARD, J.

{1} Defendant challenges the district court's decision to change the jury's verdict from not guilty to guilty on a charge of driving while under the influence of intoxicating liquor (DWI). Defendant argues that changing the verdict violated his right to be free from double jeopardy. Defendant also argues that the district court's jury polling procedure violated his due process rights. Concluding that it was improper for the district court to change the jury's verdict under the circumstances of this case, we reverse Defendant's DWI conviction.

## BACKGROUND

{2} The State charged Defendant with committing the crimes of DWI, driving while license suspended or revoked, and concealing identity. The case was tried to a jury. At the conclusion of jury deliberations, the jury returned to the courtroom to deliver the verdicts. Upon receiving the verdict forms from the jury foreman, the trial court asked the clerk to publish the verdicts. The clerk then read the verdicts, stating that the jury found Defendant guilty of driving while license suspended or revoked and concealing identity, but not guilty of DWI. The trial court then stated that it was "going to incorporate these verdicts into the records of our Fifth Judicial District" and asked counsel if there was a need to poll the jury. The attorneys for the State and Defendant both declined the opportunity to poll the jury. The trial court then stated, "All right. I'm going to discharge the jury. And thank you for working with us and for us today. Please call the Code–a–Phone over the weekend. Thank you." The bailiff then asked everyone to stand for the jury, and the transcript states, "Jury out at 3:15 p.m." Thereafter, the transcript contains the following exchange:

> THE BAILIFF: One moment, Your Honor. I'm moving the jury back into the jury room. They're saying that a verdict was read wrong.
>
> THE COURT: All right. That's fine.

> THE BAILIFF: Let us see what's going on. Okay? I'll be right back with you in just a moment.
>
> THE COURT: It was not read wrong.
>
> THE BAILIFF: They were saying the DWI verdict was read wrong.
>
> THE CLERK: I read what it says.

Believing that the jury was "still intact," the trial court decided to recall the jury. But before bringing the jury back into the courtroom, the trial court and attorneys agreed to poll the jury to determine if the not guilty verdict was correct. The transcript reflects that the jury returned to the courtroom at 3:20 p.m., five minutes after the transcript showed the jury as out of the courtroom.

{3} Upon its return, the trial court advised the jury that it "ha[d] been told by the bailiff, before you people exited, that the verdict had been read wrong as to" the DWI charge. After confirming that the jury foreman had indeed signed the not guilty verdict form for the charge of DWI, the trial court proceeded to poll the jury. The members of the jury individually confirmed that their verdict on the charge of DWI was guilty. The trial court therefore concluded that the jury foreman's act of signing the not guilty verdict form was a clerical error and ordered the record corrected to reflect a verdict of guilty on the DWI charge.

## DISCUSSION

{4} Defendant argues that the trial court's decision to change the verdict on the DWI charge from acquittal to conviction violated his right to be free from double jeopardy. Because Defendant does not make a distinction between his double jeopardy protections under our state and federal constitutions, we limit our discussion to the federal constitution. *See State v. Reyes*, 2002–NMSC–024, ¶ 10 & n. 2, 132 N.M. 576, 52 P.3d 948 (limiting the consideration of a double jeopardy claim to the federal constitution where the defendant failed to argue that the state constitution provides greater protection). Although the State questions whether Defendant adequately preserved his double jeopardy argument below, the State nevertheless recognizes that Defendant may raise a double jeopardy challenge on appeal regardless of preservation. *See* NMSA 1978,

§ 30–1–10 (1963) (providing that "double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment"). We therefore proceed to address the merits of Defendant's argument.

{5} We review a claim of double jeopardy de novo. *See City of Albuquerque v. One (1) 1984 White Chevy Ut.*, 2002–NMSC–014, ¶ 5, 132 N.M. 187, 46 P.3d 94. However, to the extent that a double jeopardy claim involves factual determinations, we give the trial court wide latitude in its factfinding function. *See State v. Salazar*, 1997–NMCA–088, ¶ 9, 124 N.M. 23, 946 P.2d 227.

{6} To decide whether the guilty verdict in this case subjected Defendant to double jeopardy, we must first determine whether the trial court erred in reassembling the jury to inquire into the validity of the not guilty verdict signed by the jury foreman and announced by the trial court. *Compare Brown v. Gunter*, 562 F.2d 122, 124–25 (1st Cir. 1977) (ruling that there is no double jeopardy violation when a state adopts and applies a procedural rule that allows the trial court to reassemble a discharged jury to correct its verdict under limited circumstances), *with People v. Henry*, 248 Mich.App. 313, 639 N.W.2d 285, 288–89 (2001) (ruling that a double jeopardy violation occurs when the trial court improperly reassembles a discharged jury to change its verdict). The question, therefore, is whether the trial court acted properly in reassembling the jury in this case for the ostensible purpose of correcting the verdict.

{7} Whether a trial court may reassemble a discharged jury to amend, clarify, or correct a verdict is the subject of a surprising number of cases throughout the country. *See generally* David J. Marchitelli, Annotation, *Criminal Law: Propriety of Reassembling Jury to Amend, Correct, Clarify, or Otherwise Change Verdict After Jury Has Been Discharged, or Has Reached or Sealed Its Verdict and Separated*, 14 A.L.R.5th 89 (1993). Some courts take the view that a jury cannot be reassembled to revise its verdict once the trial court pronounces the jury formally discharged. *See, e.g., West v. State*, 228 Ind. 431, 92 N.E.2d 852, 855 (1950).

Other courts take a fact-intensive view that the moment of discharge depends on when the jury actually leaves the presence or control of the court and disperses rather than when the trial court formally pronounces the jury discharged. *See, e.g., State v. Brandenburg*, 38 N.J.Super. 561, 120 A.2d 59, 61 (N.J. Hudson County Ct.1956).

{8} New Mexico case law has long recognized that a trial court should not reassemble a jury to change its verdict after the jury has been discharged. *See Murry v. Belmore*, 21 N.M. 313, 319, 154 P. 705, 707 (1916) ("After a verdict has been received and entered upon the minutes, and the jury has been dismissed, they have not the power to reassemble and alter their verdict."). Although *Murry* was a civil case, a criminal case warrants at least the same precautions against improperly inquiring into a jury verdict. *See People v. Rushin*, 37 Mich.App. 391, 194 N.W.2d 718, 720 (1971) (recognizing that special precautions must be taken when recalling the jury after formal discharge in a criminal case because of double jeopardy concerns and the "differing nature of the criminal process"); *see also State v. Perez*, 95 N.M. 262, 265, 620 P.2d 1287, 1290 (1980) (recognizing that the trial court does not abuse its discretion by denying a defendant's request to poll a discharged jury).

{9} The State contends that *Murry* does not require reversal in this case because the *Murry* jury was not reassembled until the day after it was formally discharged, while the jury in this case was reassembled shortly after it was formally discharged. We acknowledge that the time from discharge to reassembly was much longer in *Murry* than in this case. However, we do not believe the record in this case supports the trial court's decision to reassemble the jury.

{10} The State cites to a number of cases from other jurisdictions upholding trial court decisions to reassemble a jury and allow it to change its verdict in some manner. Common to all of these cases is a functional approach to determining when a jury is discharged regardless of when the court formally pronounces the jury as discharged. Because this approach is factually driven by the extent to which the jury remained under the

control of the court and the extent to which the jury actually dispersed upon being formally discharged, the State argues that we should defer to the district court's statements indicating that the jury remained "intact" and was recalled as it was leaving and before it "exited" the courtroom. Despite the trial court's belief that the jury remained intact and could be recalled to correct its verdict, we disagree that the record supports such conclusions. *See State v. Taylor,* 2000–NMCA–072, ¶ 18, 129 N.M. 376, 8 P.3d 863 (stating that although the appellate court views the trial court's decision in the light most favorable to the ruling, "the review requires scrutiny of the evidence and supervision of the fact-finding process to determine" whether there is evidence in the record to satisfy "the relevant burden of proof"); *cf. State v. Edwards,* 15 Wash.App. 848, 552 P.2d 1095, 1097–98 (1976) (indicating the ways in which an evidentiary record may be made by separate evidentiary hearing or otherwise).

■ {11} The record indicates that the jury dispersed at 3:15 p.m., upon being formally discharged. Although the bailiff remarked that he was moving the members of the jury back into the jury room, upon hearing from some members of the jury that the verdict had been read wrong, the record is silent regarding where the jury had moved, upon its formal discharge, and there is no indication whether there were bystanders near the members of the jury before they were moved back into the jury room. *See State v. Green,* 995 S.W.2d 591, 613 (Tenn. Crim.App.1998) (recognizing that the relevant inquiry is whether formally discharged jurors were exposed to the possibility of outside contact or influence). Because the trial court remarked on several occasions that the jury was still intact, had not yet exited the court, "didn't even get out of the [chute]," and was only just beginning to leave, the State suggests that we should defer to the trial court's view of the situation and uphold the decision to reassemble the jury. However, we cannot conclude from the silent record that the jury was not within proximity to bystanders and other members of the public upon its formal discharge. *See Melton v. Commonwealth,* 132 Va. 703, 111 S.E. 291,

294 (1922) (declining to presume no improper juror' contact from a silent record); *see also Montanez v. People,* 966 P.2d 1035, 1037 (Colo.1998) (en banc) (recognizing that the defendant does not carry the burden of showing that discharged jurors communicated with others). While the State emphasizes that a very short period of time passed from when the jury was formally discharged to when it was moved back into the jury room, even the slightest possibility of juror contamination should preclude reassembling the jury to inquire into the validity of its verdict. *See Rushin,* 194 N.W.2d at 721–22 ("The Court cannot ascertain the influence to which the jury has been subjected after it has left the courtroom, be it for two minutes or two days."). We also note that even after the jury was moved back into the jury room by the bailiff, there is no indication in the record that the jury was free from any unauthorized contact. *See Green,* 995 S.W.2d at 613 (declining to consider presence of court officers with jurors after formal discharge as a basis for concluding that the jurors were not in fact discharged); *Melton,* 111 S.E. at 294 (noting possibility of improper communications between formally discharged jurors and court personnel because jurors are no longer restricted by customary admonitions and the relationship between court officers and jurors is then one "of third persons").

‚ [5] {12} While it is tempting to minimize the risks associated with allowing the jury to reassemble and revisit the correctness of its verdict under the circumstances of this case, we must take every precaution to avoid casting even the slightest doubt on the propriety of jury verdicts in criminal proceedings. *See Montanez,* 966 P.2d at 1037 (emphasizing that the jury should not be allowed to reassemble whenever there is any possibility of improper contact because "[a]ny rule to the contrary would invite doubt regarding the integrity of verdicts and raise legitimate concerns as to the reliability of the jury system"); *Melton,* 111 S.E. at 294 ("The sanctity of jury trials cannot be thus subjected to the hazard of suspicion."). Although the trial court characterized its actions as correcting a clerical error in the jury's verdict, we question whether changing

the verdict from not guilty to guilty may be characterized as fixing a clerical error. *See Montanez*, 966 P.2d at 1037 n. 2 (rejecting the characterization of the change of a verdict from acquittal to conviction as the simple correction of a clerical error).

■ {13} In sum, we agree with the State that adopting the functional approach is most consistent with New Mexico law. Nonetheless, our cases involving possible contamination of juries emphasize the sacrosanctity of the jury's processes, *see State v. Ramming*, 106 N.M. 42, 49, 738 P.2d 914, 921 (Ct.App.1987), and follow the rule that a presumption of prejudice arises which the State must specifically rebut before a verdict, questionable even only in the slightest degree, will be upheld. *See State v. Coulter*, 98 N.M. 768, 768–70, 652 P.2d 1219, 1219–21 (Ct.App. 1982) (reversing conviction when alternate juror went into jury room with deliberating jury, but was then removed after ten minutes). In this case, the possibility of contamination by bystanders or court officials, unbound by the usual admonitions, was not even addressed, much less excluded. Accordingly, we must hold that the jury was separated, dispersed, and not otherwise under the control of the court sufficiently to allow the change in verdict to stand. To the extent that cases such as *Masters v. State*, 344 So.2d 616, 620–21 (Fla.Dist.Ct.App.1977), suggest an opposite result, we note that these cases are inconsistent with our presumption of prejudice approach.

■ {14} Because the trial court erred in reassembling the jury and allowing it to change its not guilty verdict, Defendant's right to be free from double jeopardy is plainly implicated. Once jeopardy has attached and the accused has been acquitted, the prohibition against double jeopardy precludes the government from placing the accused in jeopardy a second time for the same offense. *See Green*, 995 S.W.2d at 614 (holding that the improper reassembly of a discharged jury to change a verdict from not guilty to guilty violated the defendant's right to be free from double jeopardy); *Rushin*, 194 N.W.2d at 722 (same). That is precisely what happened in this case. The jury returned a verdict of not guilty on the charge

of DWI, and no objections to the verdict were raised before the jury was discharged. Under these circumstances, we hold that the district court's decision to change the jury's verdict from one of acquittal to one of conviction was a violation of the constitutional prohibition against double jeopardy.

## CONCLUSION

{15} Based on the foregoing, we reverse and remand with instructions to vacate Defendant's conviction for DWI. Because Defendant did not challenge his other convictions, we remand for the preparation of a new judgment and sentence on these convictions only. In light of our decision, we need not address the remainder of Defendant's arguments on appeal.

{16} **IT IS SO ORDERED.**

CELIA FOY CASTILLO and IRA ROBINSON, JJ., concur.