2006-NMCA-002

126 P.3d 553

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Raul PACHECO, Defendant–Appellant.**

**No. 24,154.**

Court of Appeals of New Mexico.

Nov. 8, 2005.

Certiorari Granted, No. 29,557, Dec. 21, 2005.

Patricia A. Madrid, Attorney General Santa Fe, NM, M. Anne Kelly, Assistant Attorney General Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Public Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} This case requires us to determine the consequence of an interpreter being present while the jury deliberated Defendant's guilt or innocence without the benefit of an oath or instruction to ensure that she neither participate in or interfere with the jury's deliberations. We hold that in these circumstances there is a presumption of prejudice. Since the presumption was not overcome, we reverse Defendant's convictions and remand for a new trial.

## BACKGROUND

{2} During voir dire and throughout the trial, an interpreter was present so that two of the jurors could understand what was taking place. An interpreter was also used to assist one of the witnesses at Defendant's request, although the transcript does not disclose whether it was the same interpreter.

{3} The State correctly points out that it is not clear from the record whether an interpreter was present during the jury's deliberations. However, Defendant's motion for a new trial asserts that the interpreter was present while the jury deliberated, and that she was not given an oath not to participate directly or indirectly in the jury deliberations. The State did not contradict this factual assertion. Moreover, a failure or refusal to provide an interpreter to assist the non-English speaking jurors in their deliberations would constitute reversible error in itself be-cause without an interpreter they could not meaningfully participate in the deliberations. *State v. Gallegos*, 88 N.M. 487, 489, 542 P.2d 832, 834 (Ct.App.1975) ("It is self-evident that a juror who does not possess a working knowledge of English would be unable to serve because he cannot possibly understand the issues or evaluate the evidence to arrive at an independent judgment as to the guilt or innocence of the accused." However, "[s]uch would not be the case if testimony and evidence were translated."). Accordingly, we presume that the trial court properly accommodated the two non-English speaking jurors by allowing the interpreter to assist them in deliberations. *See State v. Rojo*, 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (holding that where the record is doubtful or deficient, every presumption is indulged by the reviewing court in favor of the correctness and regularity of the proceedings in the trial court).

## DISCUSSION

{4} The effect of the interpreter's presence while the jury deliberated without the benefit of an oath or instruction concerning her proper role and that she not participate in or interfere with the deliberations of the jury presents a legal question which we review de novo. *See State v. Juarez*, 120 N.M. 499, 502, 903 P.2d 241, 244 (Ct.App. 1995) (stating a de novo standard of review is appropriate for threshold constitutional issues).

{5} Two separate constitutional rights are at issue in this case. First, our Constitution guarantees that every citizen shall have the right to serve as a juror whether or not he or she can speak, read, or write the English language. N.M. Const. art. VII, § 3 directs, "[t]he right of any citizen of the state to ... sit upon juries, shall never be restricted, abridged or impaired on account of ... language or ... inability to speak, read or write the English or Spanish languages." To implement the constitutional right, our Supreme Court issued the *Non–English Speaking Juror Guidelines* (NES Guidelines) in 2000, a copy of which are attached as an Appendix to this opinion. The Supreme Court has also directed that "the trial court must make every reasonable effort to protect

a juror's rights under Article VII, Section 3 of the New Mexico Constitution and to accommodate a juror's need for the assistance of an interpreter." *State v. Rico,* 2002–NMSC–022, ¶ 1, 132 N.M. 570, 52 P.3d 942. Any failure to do so must be justified by unique needs and limitations. *Id.* ¶ 12. *See also* NES Guidelines Introduction, Section I (stating, "all courts are encouraged to implement the standards [of the Guidelines] to the fullest extent possible").

{6} The second constitutional right at issue in this case is the right of a defendant to be tried by a jury, described as "one of the most important safeguards against tyranny which our law has designed." *Lee v. Madigan,* 358 U.S. 228, 234, 79 S.Ct. 276, 3 L.Ed.2d 260 (1959). Most recently, in *Blakely v. Washington,* 542 U.S. 296, 305–306, 124 S.Ct. 2531, 159 L.Ed.2d 403, (2004), the United States Supreme Court has observed that the right to a jury trial "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Id.* For this reason, both the United States and New Mexico Constitutions guarantee criminal defendants the right to a jury trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."); N.M. Const. art. II, § 12 ("The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate.").

{7} The heart of a jury's function lies in its deliberations. To ensure that the constitutional right to a jury trial is fully protected, we have recognized that communications with jurors occurring during deliberations directly bearing on the issues in the trial, "reflect the sacrosanctity of the jury's deliberative process." *State v. Ramming,* 106 N.M. 42, 49, 738 P.2d 914, 921 (Ct.App.1987); *accord Farrow v. State,* 573 So.2d 161, 164 (Fla.Dist.Ct.App.1990) (en banc) (Garrett, J., dissenting) (noting that "[j]ury deliberations are an intricate, sacrosanct and fragile part of our judicial system"); *State v. Alexander,* 143 N.H. 216, 723 A.2d 22, 30 (1998) (holding

that "[t]rial courts have the obligation to scrupulously protect the sanctity of the jury room"). Therefore, "the introduction or intrusion [into the jury room] of an unauthorized person during jury deliberations has been regarded as fundamental error requiring either a mistrial or a new trial." *Dilorenzo v. State,* 711 So.2d 1362, 1363 (Fla.Dist. Ct.App.1998).

{8} The presence of an interpreter during jury deliberations does not constitute, per se, the presence of an unauthorized person giving rise to a presumption of prejudice. *See Rico,* 2002–NMSC–022, 132 N.M. 570, 52 P.3d 942, app. at 575 (noting that in protecting the constitutional right of non-English speaking citizens to serve on a jury, "we believe that the use of court interpreters during jury deliberations does not constitute an unauthorized presence in the jury room"); *United States v. Dempsey,* 830 F.2d 1084, 1091 (10th Cir.1987) (holding that "an important social policy argues against automatically foreclosing members of an important segment of our society from jury duty simply because they must take an interpreter into the jury room"). However, "the presence of any nonjuror creates a danger that he or she will participate in the deliberations." *People v. Guzman,* 76 N.Y.2d 1, 556 N.Y.S.2d 7, 555 N.E.2d 259, 263 (1990). This danger is particularly acute for an interpreter who is actively translating during the deliberation process itself. We must therefore strike a balance between protecting the right of non-English speaking citizens to serve as jurors and the sanctity of the jury's deliberations.

{9} In *Dempsey,* the Tenth Circuit considered whether a sign language interpreter could accompany a deaf juror during deliberations. 830 F.2d at 1086. The court expressed concern that it could never know for sure whether the interpreter had improperly influenced the jury with her "facial expressions, pauses, gestures[,] or otherwise." *Id.* at 1091. However, the court noted that the trial court had required the interpreter to take an oath that she would translate correctly and that she would not interfere with or participate in the jury's deliberations. *Id.* Further, after the jury's deliberations, the trial court asked the interpreter whether she

had participated in the jury's deliberations other than to translate. *Id.* Because the interpreter's "oath to act strictly as an interpreter and not to participate in the deliberations" sufficiently protected the jury's deliberations, the court held that the interpreter's presence did not warrant a new trial of the defendant. *Id.* at 1092; *accord Guzman,* 556 N.Y.S.2d 7, 555 N.E.2d at 263 (holding that the district court may sufficiently protect against the danger of improper participation by the interpreter by instructing the interpreter and the jurors that the interpreter may not participate in deliberations).

{10} The NES Guidelines seek to protect the constitutional right of non-English speaking citizens to serve on a jury, and to also ensure that a defendant's right to a fair trial is not compromised by the use of an interpreter. They do so by emphasizing the interpreter's limited role. Section III(C)(5) (pre-deliberation instructions) provides:

> Prior to excusing the jury for deliberations, the trial judge should, *on the record* in the presence of the jury, instruct the court interpreter who will be providing interpretation services for an NES juror that the interpreter should not interfere with deliberations in any way by expressing any ideas, opinions, or observations that the interpreter may have during deliberations but should be strictly limited to interpreting the jury deliberations. The trial judge should also ask the court interpreter to affirmatively state *on the record* that the interpreter understands the trial judge's instructions.

(Emphasis added.) Section III(C)(6) (post-deliberation instructions) provides:

> Following jury deliberations but before the jury's verdict is announced, the trial judge should ask the court interpreter *on the record* whether the interpreter abided by his or her oath to act strictly as an interpreter and not to participate in the deliberations. The interpreter's identity and answers should be made a part of the record. At the request of a party to the litigation, the jurors may also be questioned to the same effect. The trial judge should also instruct the court interpreter

not to reveal any aspect of the jury deliberations after the case is closed.

(Emphasis added.)

{11} No guidance was given to either the interpreter or the jury regarding the interpreter's role during deliberations because no pre- and post-deliberation instructions were given. The only oath given to the interpreter was before the first witness was called, as follows: "Do you solemnly swear that you will faithfully and impartially interpret English into Spanish and Spanish into English the testimony about to be given in the cause now on trial so help you God?" *See* NES Guidelines, Section III(C)(2); NMSA 1978, § 38–10–8 (1985) (stating that an interpreter, "before entering upon his duties, shall take an oath that he will make a true and impartial interpretation or translation in an understandable manner using his best skills and judgment in accordance with the standards and ethics of the interpreter profession").

{12} Moreover, apart from a brief explanation to Victim when she testified that the interpreter "is translating everything you're saying from English into Spanish", the trial court offered no explanation of the interpreter's presence, or guidance to the jurors that her sole duty was to interpret. This failure also contravened the NES Guidelines, Section III(C)(4), which directs:

> Prior to the commencement of proceedings, the trial court judge should explain the role of the court interpreter to those present in the courtroom by explaining that the interpreter was appointed by the court to assist jurors or prospective jurors who do not understand English. The judge should also explain to the jury that the interpreter is only allowed to interpret and that the jurors may not ask the interpreter for advice or other assistance. The judge should also explain that, for those English speaking jurors who may understand the non-English language spoken by the court interpreter, the jurors should disregard what they hear the interpreter say and rely solely on the evidence presented in English.

{13} Absent any of the foregoing explanations, instructions, or oaths required by the NES Guidelines or any other protections

such as in *Dempsey,* relating to jury deliberations, we cannot presume that the interpreter or jurors were even aware of the interpreter's limited duty only to interpret during deliberations. *Cf. Saunders v. State,* 49 S.W.3d 536, 540–41 (Tex.Ct.App.2001) (holding that the court's failure to administer an oath to the interpreter to not participate in any manner in the jury deliberations did not merit reversal when the court's instructions to the jury that the interpreter is not a member of the jury and will not give advice when deliberating was directed to the interpreter as well as the jury members). Without protective instructions or an oath, as we have discussed, we are left to speculate about the interpreter's role while this jury deliberated Defendant's guilt or innocence. In light of the sanctity of the jury room, we will not speculate that no improper communications took place when the safeguards to prevent such communications were not implemented.

{14} New Mexico has a long tradition of finding a "presumption of prejudice" by the mere presence of an unauthorized person before a trial jury or grand jury when it is performing its core function. *State v. Coulter,* 98 N.M. 768, 770, 652 P.2d 1219, 1221 (Ct.App.1982) (holding a presumption of prejudice arose when alternate juror was present during jury deliberations); *Davis v. Traub,* 90 N.M. 498, 499–500, 565 P.2d 1015, 1016–17 (1977) (adopting holding of *State v. Hill,* 88 N.M. 216, 220, 539 P.2d 236, 240 (Ct.App. 1975), that "the presence of an unauthorized person before the grand jury requires dismissal of the indictment, without the necessity of showing prejudice"); *Baird v. State,* 90 N.M. 667, 669, 568 P.2d 193, 195 (1977) (holding that a defendant need not show prejudice where the district attorney is present during grand jury deliberations).

{15} We agree with the dissent that an interpreter is, in effect, an officer of the court who assists the court in the trial. However, in light of her unique and sensitive role in perhaps the most crucial part of the trial, her presence while the jury deliberates is unauthorized in the absence of any appropriate protections. Furthermore, our cases also recognize a presumption of prejudice when communications with jurors occur while they are deliberating without following proper procedures. *Hovey v. State,* 104 N.M. 667, 669–70, 726 P.2d 344, 346–47 (1986) (holding that presumption of prejudice resulted when the judge and jury had a communication relating to the issues of the case without the presence of the defendant); *State v. Gutierrez,* 78 N.M. 529, 531, 433 P.2d 508, 510 (Ct.App.1967) (holding that under standards of due process, there is a presumption of prejudice arising from any unauthorized communication with a trial juror during trial); *see also Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ("In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.").

{16} We recognize that Rule 11–606(B) NMRA provides a possible avenue for determining whether an interpreter exceeded her proper role. In the present case, however, absent the safeguard of the trial court fulfilling its obligation in the first place to impress upon the interpreter and juror that the interpreter's role is limited solely to interpreting, we are unwilling to consider the interpreter's unauthorized presence pursuant to the Rule 11–606(B) avenue. First, as we have already discussed, the jurors were not told of the interpreter's limited duty only to interpret, so they would not even be aware of whether an impropriety occurred. Secondly, citizens called to serve as jurors may have all kinds of native languages, such as Chinese, Russian, Vietnamese, Navajo, German, or Spanish. Without his own interpreter, a defendant cannot even interview the non-English speaking jurors about any possible impropriety.

{17} Ultimately, our goal is to protect the integrity of the jury's decision making process. Consistent with these principles, we have recently reiterated, "we must take every precaution to avoid casting even the slightest doubt on the propriety of jury verdicts in criminal proceedings." *State v. Rod-*

*riguez*, 2004–NMCA–125, ¶ 12, 136 N.M. 494, 100 P.3d 200, *cert. granted*, 2004–NMCERT–010, 136 N.M. 542, 101 P.3d 808, 808. We facilitate full and frank discussions during deliberations, protect the fairness and impartiality of jury decisions, and prevent the possibility of undue influence on jurors, by presuming prejudice in this case.

{18} We therefore hold that an interpreter may accompany a non-English speaking juror into the jury room during deliberations provided that the trial court first requires the interpreter to take an oath that he or she will not participate in or interfere with the jury's deliberations. *See Dempsey*, 830 F.2d at 1092. The interpreter's oath must be given on the record and in the jury's presence. Giving the oath on the record will dispel the possibility or even appearance of an impermissible thirteenth juror. Giving the oath in the presence of the jury will clarify for the jury what the interpreter's role is during deliberations and further safeguard the sanctity of the jury room. *See Guzman*, 556 N.Y.S.2d 7, 555 N.E.2d at 263 (noting that the danger presented by the interpreter's presence during jury deliberations may be overcome by instructing the jury and the interpreter that the interpreter may not participate in deliberations and "that any breach should be reported to the court"). The interpreter's oath creates a presumption that the interpreter will act properly during deliberations. *See Thomason v. Territory of N.M.* 4 N.M. 154, 167, 13 P. 223, 228 (1887) (holding that where an interpreter is "[a]cting under oath and the order of the court, the presumption should be in favor of proper action by him, rather than against it").

{19} The State argues, and the dissent agrees, that because Defendant did not object to the trial court's failure to administer an appropriate oath to the interpreter until after the jury had rendered its verdict, Defendant waived the issue. We will not extend the possibility of waiver to the jury deliberation process in the absence of *any* safeguards to impress upon the interpreter, and the jury, that the interpreter's role is limited to that of interpreting. Were we to uphold Defendant's conviction despite the fundamental flaw of the lack of any interpreter instruction, we would undermine the foundation of our jury system, and ultimately diminish public confidence in a defendant's right to a fair trial. We accordingly refuse to speculate that no improper communication took place when the safeguards to prevent such communication were absent. *See Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (holding that a deficient reasonable doubt instruction is a structural defect in the very constitution of the trial mechanism and therefore incapable of correction by harmless error analysis); *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) (holding that errors which "seriously affect the fairness, integrity or public reputation of judicial proceedings" may be raised for the first time on appeal); *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521, 531 (1975) (holding that, despite the defendant's failure to object, the presence of an alternate juror in the jury room during deliberations "is a fundamental irregularity of constitutional proportions which requires a mistrial or vitiates the verdict"). We may, in our discretion, consider issues that a defendant failed to preserve if they involve "general public interest" or a "fundamental error or fundamental rights of a party." Rule 12–216(B) NMRA. As we have already discussed, this case involves fundamental rights. "Because a fundamental right is involved, the issue is reviewable." *Coulter*, 98 N.M. at 770, 652 P.2d at 1221; *see State v. Orona*, 92 N.M. 450, 455–56, 589 P.2d 1041, 1046–47 (1979) (reviewing the trial court's improper communication with the jury despite the defendant's failure to lodge an objection until after the verdict had been returned); *see also State v. Barber*, 2004–NMSC–019, ¶ 16, 135 N.M. 621, 92 P.3d 633 (recognizing that "another strand runs through the fundamental error doctrine that focuses less on guilt and innocence and more on process and the underlying integrity of our judicial system"); *State v. Holloway*, 106 N.M. 161, 163–64, 740 P.2d 711, 713–14 (Ct. App.1987) (recognizing that some rights are so fundamental that they cannot be waived); *State v. Osborne*, 111 N.M. 654, 661–62, 808 P.2d 624, 631–32 (1991) (holding that the failure to instruct on essential elements is

reversible fundamental error even when the defendant aided in the error and did not request instructions).

{20} To the extent Defendant's conduct can be construed as a waiver of his own rights, we doubt he could waive the rights of the non-English speaking jurors. As we have said, this case not only involves Defendant's constitutional right to be tried by a jury, it also involves the constitutional right of non-English speaking persons to serve as jurors. A concomitant of this right, as we have observed, is the right to deliberate without any interference or participation by a "thirteenth juror." The protections of these constitutional rights of a juror should not be measured by a defendant's actions or inactions. Instead, it is the obligation of the trial court to ensure this structural integrity of the trial process. We therefore disagree with the dissent that the trial court "did not have the opportunity to address the interpreter's presence...." Dissent, ¶ 26. The trial court had an ample opportunity and the obligation to protect this constitutional right of the jurors.

{21} In this case, the trial court only required the interpreter to take an oath to faithfully and impartially translate the testimony. We hold that this oath was insufficient to safeguard against interference, or the appearance of interference, with the jury's deliberations. The failure of the trial court to administer an appropriate oath to the interpreter resulted in a presumption of prejudice; *see Coulter,* 98 N.M. at 769, 652 P.2d at 1220, which the State has not attempted to overcome. *See id.*

{22} Based on the foregoing, we reverse and remand for a new trial consistent with this opinion. Because we remand for a new trial, we need not address Defendant's remaining contentions.

{23} **IT IS SO ORDERED.**

I CONCUR: IRA ROBINSON, Judge.

JAMES J. WECHSLER, Judge (dissenting).

{24} I respectfully dissent. Although I agree with the majority with regard to the right of a non-English speaking citizen to serve on a jury and the importance of a jury trial and jury deliberations, I do not agree that there was a presumption of prejudice or any indication that Defendant's rights were prejudiced.

{25} My point of departure with the majority is the conclusion that the presence of the interpreter in the jury room was unauthorized. I start from the opposite premise. As Defendant states, the non-English speaking jurors had the constitutional right to be accompanied by the interpreter into the jury room. *See Rico,* 2002–NMSC–022, ¶¶ 5–9, 132 N.M. 570, 52 P.3d 942. Thus, I begin with the premise that the interpreter's presence in the jury room was not unauthorized. Indeed, in its order denying a petition for a writ of prohibition or alternative writ of superintending control in *State ex rel. Martinez v. Third Judicial District,* No. 26,109 (January 26, 2000), attached as an appendix to *Rico,* 2002–NMSC–022, 132 N.M. 570, 52 P.3d 942, our Supreme Court stated that it believed that "the use of court interpreters during jury deliberations does not constitute an unauthorized presence in the jury room." Instead, it stated that the "interpreter's role is bound by ethical constraints, court rules and orders, and court instructions. To the extent that these safeguards may be breached in an individual case, the normal appellate process for correcting other trial errors will provide the most effective remedy." *Id.*

{26} There was a breach in the safeguards in this case because the trial court permitted the interpreter into the jury room without an oath to not interfere with or participate in the jury deliberations or an instruction to the interpreter and the jury about the role of the interpreter. The majority concludes that unless the district court administers such an oath to the interpreter, the interpreter's presence in the jury room is unauthorized. It relies on *Dempsey,* which holds that court procedures or instructions can assist the court to determine that no impropriety took place when a defendant has raised the issue in the trial court. *Dempsey,* 830 F.2d at 1091–92. *Dempsey* does not address the circumstances of this case in which the district court did not have the opportunity to address the interpreter's presence, and the issue is

raised, as a matter of fundamental error, without any evidence of impropriety. Moreover, the Tenth Circuit in *Dempsey* did not engage any presumption of prejudice. Rather, it considered any undue influence on the part of the interpreter to "rest upon speculation" in the absence of evidence of any impropriety. *Id.*

{27} The determinative issue to me, when the record does not show any prejudice to Defendant, is whether the district court or Defendant shoulders the responsibility for the absence of the safeguarding oath or instruction. Because I do not believe that the interpreter's presence was unauthorized, I would focus the inquiry in this case on whether Defendant waived his right to a fair and impartial trial. I would conclude that the integrity of the judicial process has not been so vitiated that Defendant·did not need to raise his argument that there may have been a defect in the process to the district court. As observed by our Supreme Court in *State v. Sanchez*, 2000–NMSC–021, ¶ 26, 129 N.M. 284, 6 P.3d 486, "the right to trial by a fair and impartial jury is a fundamental right," but even fundamental rights "may be waived or lost by the accused" if the State demonstrates a waiver. (Internal quotation marks and citations omitted.) *See State v. Singleton*, 2001–NMCA–054, ¶ 11, 130 N.M. 583, 28 P.3d 1124 (stating that "the right to a fair and impartial jury is a fundamental right that can be waived"). While failure to preserve an issue may be a factor in determining whether there has been a waiver, it does not end the inquiry. *See State v. Escamilla*, 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988) (stating that appellate courts will not consider issues not preserved unless they involve fundamental rights or fundamental error, but that even issues involving fundamental rights, including the right to a fair and impartial jury, may be waived).

{28} I believe Defendant waived his argument by not objecting in the trial court. Defendant had requested that a certified interpreter be present at trial to translate for a witness. I disagree with the majority's assertion that "the transcript does not disclose" whether the same interpreter was used for the jurors. The transcript of the court's statements and the interpreter's voice on the tapes of the trial make it clear to me that the interpreter was the same. Because Defendant had requested a certified interpreter, I assume that the interpreter was certified and trained in accordance with the Court Interpreters Act, NMSA 1978, § 38–10–5 (1985). *See appendix to Rico*, 2002–NMSC–022, 132 N.M. 570, 52 P.3d 942 (pointing to "ethical constraints" as a factor restricting an interpreter's role during jury deliberations).

{29} The court administered an oath to the interpreter at the beginning of trial that the interpreter would interpret properly in the case. The court further explained that two jurors had requested an interpreter. The interpreter's participation as an aide to jurors gives rise to a reasonable expectation that she would interpret for the jurors during jury deliberations. Although the court also has the responsibility to ensure the correctness of the process and the protection of Defendant's rights, I do not believe that Defendant can sit silently as the trial proceeds and not be bound by events that reasonably can be anticipated. *See Singleton*, 2001–NMCA–054, ¶ 12, 130 N.M. 583, 28 P.3d 1124.

{30} Notably, Defendant's motion for a new trial argues that the trial court neglected to give the interpreter an oath, not that Defendant was not aware that the interpreter was present in the jury room. There is no indication in the record that Defendant, the jurors, or any other participant had any question about the interpreter's involvement. *See Dempsey*, 830 F.2d at 1092.

{31} Not having alerted the trial court to the issue at trial, Defendant raised the issue in a motion for a new trial, stating, speculatively, "we will never know whether the interpreter participated directly or indirectly in the deliberations." But Defendant did not utilize the avenue provided by the Rules of Evidence to properly challenge the validity of the jury's verdict. *See Dempsey*, 830 F.2d at 1092. Under Rule 11–606(B), Defendant could have called upon jurors to testify as to whether the interpreter participated in the jury deliberations in any manner. Defendant did submit a post-trial affidavit from an empaneled potential juror for another pur-

pose, but he did not submit any juror affidavit concerning the presence of the interpreter in the jury room. *See State v. Mann,* 2002–NMSC–001, ¶ 10, 131 N.M. 459, 39 P.3d 124 (noting that in motion for new trial on basis of juror misconduct defense counsel stated that interviewed jurors had information about misconduct). As a result, the record is without any indication of prejudice.

{32} I note that this case is not one which falls within the type of cases the majority cites as reflecting "a long tradition of finding a 'presumption of prejudice' by the mere presence of an unauthorized person before a trial jury or grand jury" performing its core function. *Coulter,* 98 N.M. at 770, 652 P.2d at 1221; *Baird,* 90 N.M. at 669, 568 P.2d at 195; *Davis,* 90 N.M. at 499–500, 565 P.2d at 1016–17; *Hill,* 88 N.M. at 220, 539 P.2d at 240. In *Coulter,* the only trial jury case cited, there was an irregularity that resulted in the unauthorized presence; an alternate juror who had heard the evidence and was prepared to deliberate was present for deliberations. *Coulter,* 98 N.M. at 768, 652 P.2d at 1219. In the grand jury cases, a clear impropriety had occurred. In *Baird,* the district attorney was present during grand jury deliberations contrary to statute. *Baird,* 90 N.M. at 668–69, 568 P.2d at 194–95. In *Davis,* an investigator from the attorney general's office, whose presence was not statutorily authorized, was present during grand jury testimony. *Davis,* 90 N.M. at 499–500, 565 P.2d at 1016–17. In *Hill,* an attorney privately employed by a relative of the victim improperly presented the facts to a grand jury. *Hill,* 88 N.M. at 218, 539 P.2d at 238. I agree with the majority that the presence in each of these cases was unauthorized and a presumption of prejudice would apply. The interpreter's presence, however, is different. She is, in effect, an officer of the court who assists the court in the trial. With this role, as earlier discussed, she was not an unauthorized presence, and I would not presume prejudice because of her presence.

{33} Nor do I agree with the majority's reliance on the NES Guidelines as authority for applying a presumption of prejudice in this case. The NES Guidelines are not rules and state desired procedures, not necessarily required ones. NES Guidelines, Section I ("Because each local court has unique needs and limitations, these guidelines may not be applicable in all courts. Accordingly, these guidelines should not be considered mandatory directives that must be followed in all cases.").

{34} Lastly, I do not agree with the majority that affirming Defendant's convictions would constitute allowing Defendant to waive the jurors' rights. *Rico* and *Singleton* both clearly indicate that a defendant can waive his or her right to object to the violation of a juror's right to serve under the New Mexico Constitution. *Rico,* 2002–NMSC–022, ¶¶ 8–9, 132 N.M. 570, 52 P.3d 942 (stating that "a criminal defendant who does not object to an exclusion of a juror in violation of Article VII, Section 3 has waived his or her ability to do so on appeal"); *Singleton,* 2001–NMCA–054, ¶¶ 9–16, 130 N.M. 583, 28 P.3d 1124 (stating that "New Mexico courts have recognized that both the state and the defendant in a criminal action can protect the rights of prospective jurors to be free from discriminatory exclusion" and affirming Defendant's convictions despite the exclusion of a juror in violation of Article VII, Section 3). The Supreme Court of the United States has similarly held that a defendant can waive his or her right to object to the violation of a juror's right to serve under the Equal Protection Clause. *See Batson v. Kentucky,* 476 U.S. 79, 87, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (noting that a juror's right to equal protection is clearly violated when he or she is excluded on the basis of race); *Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding that the defendant waived his right to challenge the exclusion of jurors in violation of the Equal Protection Clause because he raised that issue too late).

{35} Because I do not agree with the majority that a prophylactic remedy is required in this case, and because Defendant did not alert the trial court to any problem or demonstrate any prejudice, I respectfully dissent.

Appendix 1
**Supreme Court of New Mexico**
**Administrative Office of the Courts**

John M. Greacen, Director

**Administrative Office of the Courts**
**Non-English Speaking Juror Guidelines**

I.  INTRODUCTION

II.  NON-ENGLISH SPEAKING JUROR ASSISTANCE SERVICES
    A.  Scope
    B.  Court Interpreters
    C.  Jury Summons
    D.  Juror Questionnaire
    E.  Jury Handbook and Orientation
    F.  Jury Selection
    G.  Trial Proceedings
    H.  Jury Deliberations

III.  COURT INTERPRETATION STANDARDS
    A.  Certification and Availability Standards
        1.  Certified
        2.  Uncertified
        3.  Availability
    B.  Written Translation Standards
        1.  Qualification and Orientation Materials
        2.  Trial Materials
        3.  Machine Translation
    C.  Use and Performance Standards
        1.  Hours of Service
        2.  Oath of Interpreter
        3.  Pre-Interpretation Interview
        4.  Courtroom Explanation of the Role of the Interpreter
        5.  Pre-Deliberation Instructions
        6.  Post-Deliberation Instructions
        7.  Equipment

IV.  COURT INTERPRETATION COSTS
    A.  Jury and Witness Fee Fund
    B.  Interpreters in Civil Cases
    C.  Interpreter Compensation

V.  COURT INTERPRETER RECRUITMENT AND TRAINING
    A.  Administration
    B.  Special Training

## I.  INTRODUCTION

These guidelines are intended to assist in the efforts of the New Mexico Judiciary to incorporate non-English speaking (NES) citizens into New Mexico's jury system. Because each local court has unique needs and limitations, these guidelines may not be applicable in all courts. Accordingly, these guidelines should not be considered mandatory directives that must be followed in all cases. However, all courts are encouraged to implement the standards set forth below to the fullest extent possible.

## II.  NON–ENGLISH SPEAKING JUROR ASSISTANCE SERVICES

### A.  Scope

Article VII, Section 3, of the New Mexico Constitution provides that "[t]he right of any citizen of the state to ... sit upon juries,

shall never be restricted, abridged or impaired on account of ... inability to speak, read or write the English or Spanish languages." To comply with this constitutional mandate, all courts should strive to incorporate all New Mexico citizens into our jury system regardless of the language spoken by a prospective NES juror. Because most potential NES jurors speak Spanish as their primary language, these guidelines seek to implement statewide standards for accommodating prospective jurors who speak Spanish. However, where financially and logistically possible, all courts are encouraged to implement these guidelines for other languages.

## B. Court Interpreters

Upon request by an NES citizen called for jury duty, all courts should appoint a court interpreter to assist the NES juror or prospective juror. In the absence of a specific request for a court interpreter, all courts should independently determine whether a juror or prospective juror is in need of a court interpreter. To make this determination, a court may consider conducting a limited interview of the juror or prospective juror to assess whether the juror or prospective juror is capable of understanding the proceedings in English.

## C. Jury Summons

The New Mexico jury summons form should include a statement in Spanish notifying citizens called for jury duty that assistance is available for those who cannot understand English. The Spanish notice should also provide a telephone number that prospective NES jurors may call for further assistance. The Administrative Office of the Courts (AOC) is responsible for producing jury summonses for local courts that will include an appropriate Spanish notice. The AOC will coordinate with local courts to ensure that an adequate number of trained court personnel are available to respond to calls for assistance from prospective NES jurors.

## D. Juror Questionnaire

The AOC is responsible for preparing a Spanish version of the juror questionnaire used by local courts. The AOC is also responsible for distributing copies of the Spanish version of the juror questionnaire to all local courts. All local courts should provide a Spanish version of the juror questionnaire upon request from any prospective juror. All local courts should also make arrangements to have court personnel available to provide an oral, Spanish translation of the juror questionnaire and to otherwise assist prospective NES jurors who cannot read Spanish.

## E. Juror Orientation Materials

The AOC is responsible for distributing to all local courts copies of the Spanish version of jury orientation materials approved by the Supreme Court. To the extent that local courts may provide English language jury orientation materials to prospective jurors, those courts should also make arrangements to provide oral, Spanish translations when needed. Alternatively, courts are encouraged to produce written translations of juror orientation materials.

## F. Jury Selection

All courts should make arrangements to have a court interpreter available for prospective NES jurors during the jury selection process. Upon arriving for jury selection, the court should introduce the court interpreter appointed to assist prospective NES jurors and advise prospective NES jurors that they should alert the interpreter if they have any questions during the process. The transcript of proceedings need not include the foreign language statements of the court interpreter or prospective NES juror, provided that the transcript clearly indicates when a court interpreter was used to interpret for a prospective NES juror.

Although a court interpreter may provide interpretation services for more than one prospective NES juror at a time, a court interpreter ordinarily should not be used to interpret for both a litigant and a prospective NES juror. However, when the litigant and his or her attorney can communicate in the

same non-English language for confidential communications, the court interpreter may be used to otherwise interpret for both the litigant and the prospective NES juror. Subject to availability, courts are encouraged to avoid using the same court interpreter for jury selection and trial in the same case.

Prospective NES jurors are subject to peremptory challenges and challenges for cause the same as any other prospective juror. However, a prospective NES juror may not be challenged or excused simply because that juror is unable to read, write, or speak the English language. Moreover, the trial court should not excuse a prospective NES juror who asks to be excused simply because he or she cannot read, write, or speak the English language. Exercising its discretion in ruling on an objection to the service of any NES citizen, the court should consider all facts and circumstances pertaining to service by this juror, as the court would do in ruling on an objection to service by any citizen. In the event that a court interpreter will not be available to provide interpretation services for a prospective NES juror who would otherwise be selected to serve on the jury, the presiding judge may either postpone the proceedings until a court interpreter is available or excuse the juror from service for that proceeding only, provided that the prospective NES juror is recalled for jury selection for the next scheduled proceeding. If an interpreter cannot be obtained after reasonable effort, the prospective NES juror may be excused permanently.

### G. Trial Proceedings

All courts should make arrangements to have a court interpreter available for all NES jurors during all trial proceedings. The transcript of proceedings need not include the foreign language statements of the court interpreter or the NES juror, provided that the transcript clearly indicates when a court interpreter was used to interpret for an NES juror. Although a court interpreter may provide interpretation services for more than one NES juror, a court interpreter ordinarily may not provide interpretation services for both a litigant and an NES juror or

for a witness and an NES juror. However, when the litigant and his or her attorney can communicate in the same non-English language for confidential communications, the court interpreter may be used to otherwise interpret for the litigants, witnesses, other court participants, and NES jurors. Subject to availability, courts are encouraged to avoid using the same court interpreter for the trial and for jury deliberations.

### H. Jury Deliberations

All courts should make arrangements to have a court interpreter available for all NES jurors during all jury deliberations. One court interpreter may provide interpretation services for more than one NES juror at a time during deliberations. To the extent that documentary exhibits are submitted to the jury for consideration during deliberations, the court interpreter assigned to assist NES jurors may provide an oral translation of the written material. With respect to jury instructions submitted to the jury, courts are encouraged to draft written, Spanish translations of the jury instructions with the assistance of a court interpreter. Alternatively, the court interpreter assigned to assist NES jurors during deliberations may provide an oral translation of the jury instructions.

### III. Court Interpretation Standards for NES Jurors

When providing the court interpretation services to NES jurors and prospective jurors as outlined above, all courts should strive to meet the following standards:

### A. Certification and Availability Standards

#### 1. Certified

All courts should use certified court interpreters to assist NES jurors during all jury selection, trial, and deliberation proceedings. Certification is governed by the provisions of the Court Interpreters Act, NMSA 1978, §§ 38–10–1 to –8 (1985), as administered by the AOC. Except as otherwise provided below, an uncertified court interpreter should only be used if the requirements of NMSA 1978, Section 38–10–

3(B) (1985), are met. In the event that a court must use an uncertified court interpreter, the court should consider briefly examining the uncertified court interpreter to establish the qualifications of the interpreter.

### 2. Uncertified

All courts may use uncertified court interpreters to assist NES jurors and prospective jurors in completing the juror questionnaire. Uncertified court interpreters may also be used during the jury orientation process.

### 3. Availability

All courts should maintain a list of locally available certified and uncertified court interpreters and submit an updated copy of that list to the AOC by May 1st of each year. For those courts that do not have an adequate number of locally available certified or uncertified court interpreters available to assist NES jurors and prospective jurors, the local court administrator or chief judge should coordinate with the AOC to compile a list of certified and uncertified court interpreters who are available from other areas. The AOC should also assist local courts in the training of local court personnel to assist NES jurors and prospective jurors with the juror questionnaire, jury orientation, and with questions arising outside the context of formal court proceedings.

## B. Written Translation Standards

### 1. Qualification Materials

The AOC will provide all courts with a written, Spanish translation of the juror qualification form and questionnaire translated by a certified court interpreter.

### 2. Trial Materials

Written materials that are submitted to the jury for consideration during trial or jury deliberations should be orally translated by a certified court interpreter or translated in writing by a certified court interpreter. If a certified court interpreter is not available, the court may use an uncertified court interpreter to orally translate written materials if the requirements of Section 38–10–3(B) are met.

### 3. Machine Translation

A number of services are available on the Internet and elsewhere that provide free or low-cost translation of written materials from English into a number of other languages. Because machine translation may not be accurate, courts should not use machine translation for written materials that are to be used in formal court proceedings, such as jury instructions or documentary exhibits. Although courts may consider using machine translation for other informational and local orientation materials submitted to jurors and prospective jurors, all courts are cautioned against relying exclusively on machine translation without human verification of the accuracy of a machine translation.

## C. Use and Performance Standards

Because of the demanding and sensitive nature of the services provided by court interpreters appointed to assist NES jurors and prospective jurors, all courts are encouraged to use and instruct court interpreters in accordance with the following standards.

### 1. Hours of Service

All courts should strive to limit the amount of time that a court interpreter interprets for an NES juror or prospective juror to avoid court interpreter fatigue. Ideally, two court interpreters should be used as a team to provide interpretation services, and each interpreter should avoid interpreting for more than 30–45 minutes without a rest period. Because this may not be logistically feasible in all circumstances, every court should remain sensitive to the risk of court interpreter fatigue. Whenever a court interpreter suspects that the quality of interpretation may become compromised because of fatigue, the interpreter should advise the trial court judge of the need for a period of rest.

### 2. Oath of Interpreter

Before a court interpreter begins to provide interpretation services for an NES juror or prospective juror during jury selection or trial, the trial judge should administer an oath to the court interpreter in accordance with NMSA 1978, Section 38–10–8 (1985).

### 3. Pre–Interpretation Interview

Prior to providing interpretation services for an NES juror or prospective juror, with the knowledge and permission of the court, the court interpreter should briefly interview the NES juror or prospective juror to enhance the effectiveness of the interpretation by becoming familiar with the speech patterns and linguistic traits of the NES juror or prospective juror.

### 4. Courtroom Explanation of the Role of the Interpreter

Prior to the commencement of proceedings, the trial court judge should explain the role of the court interpreter to those present in the courtroom by explaining that the interpreter was appointed by the court to assist jurors or prospective jurors who do not understand English. The judge should also explain to the jury that the interpreter is only allowed to interpret and that the jurors may not ask the interpreter for advice or other assistance. The judge should also explain that, for those English speaking jurors who may understand the non-English language spoken by the court interpreter, the jurors should disregard what they hear the interpreter say and rely solely on the evidence presented in English.

### 5. Pre–Deliberation Instructions

Prior to excusing the jury for deliberations, the trial judge should, on the record in the presence of the jury, instruct the court interpreter who will be providing interpretation services for an NES juror that the interpreter should not interfere with deliberations in any way by expressing any ideas, opinions, or observations that the interpreter may have during deliberations but should be strictly limited to interpreting the jury deliberations. The trial judge should also ask the court interpreter to affirmatively state on the record that the interpreter understands the trial judge's instructions.

### 6. Post–Deliberation Instructions

Following jury deliberations but before the jury's verdict is announced, the trial judge should ask the court interpreter on the record whether the interpreter abided by his or her oath to act strictly as an interpreter and not to participate in the deliberations. The interpreter's identity and answers should be made a part of the record. At the request of a party to the litigation, the jurors may also be questioned to the same effect. The trial judge should also instruct the court interpreter not to reveal any aspect of the jury deliberations after the case is closed.

### 7. Equipment

With the assistance of the AOC, all courts should make arrangements to provide equipment for use by a court interpreter who will be providing interpretation services for NES jurors. The AOC will develop standards and seek funding to acquire adequate equipment for use by court interpreters throughout the state who will be providing interpretation services for NES jurors and prospective jurors. The equipment should allow interpreters to provide interpretation services for multiple persons with minimum disruption of the court proceedings.

To the extent that the AOC and local courts are unable to provide court interpreters with interpretation equipment, all court should assist court interpreters with the logistical arrangements for providing interpretation services whenever possible. Accordingly, prior to jury selection or trial proceedings, court personnel should identify the number of NES jurors or prospective jurors scheduled to appear in court. This information should be provided to the appointed court interpreter so that the interpreter can make arrangements for the

appropriate equipment and seating arrangements. The interpreter should obtain the prior approval of the trial court if special equipment and seating arrangements are needed. The bailiff should inform counsel if any seating changes have been made to accommodate NES jurors or prospective jurors.

## IV. COURT INTERPRETATION COSTS

### A. Jury and Witness Fee Fund

All costs associated with administering these guidelines and providing services for NES jurors and prospective jurors should be paid from the Jury and Witness Fee Fund. To the extent that such costs are initially incurred at the local court level, local courts may seek reimbursement from the Jury and Witness Fee Fund.

### B. Interpreters in Civil Cases

The costs for a court interpreter to provide interpretation services to an NES juror or prospective juror in civil cases should be paid by the court through the Jury and Witness Fee Fund.

### C. Interpreter Compensation

Court interpreters appointed to provide interpretation services for NES jurors or prospective jurors should be paid at a fixed rate in accordance with the approved fee schedule established by the AOC. However, all courts are free to employ a certified interpreter on a full-time basis or under contract at a mutually agreed upon compensation rate.

## V. COURT INTERPRETER RECRUITMENT AND TRAINING

### A. Administration

The AOC is be responsible for the recruitment and training of court interpreters to provide interpretation services for NES jurors and prospective jurors. Consistent with the New Mexico Judicial Branch Personnel Rules, local court personnel are encouraged

to train for and become certified as court interpreters.

### B. Special Training

The AOC, in consultation with the Court Interpreters Advisory Committee, *see* NMSA 1978, § 38–10–4 (1985), will develop supplemental training standards for court interpreters who will provide interpretation services for NES jurors and prospective jurors. These standards should be incorporated into the general certification process for all new court interpreters.

EFFECTIVE DATE:

Guidelines are effective November 15, 2000

_____

John M. Greacen

Director, Administrative Office of the Courts

_____

Date