[No. 1801, January 12, 1916.]
MURRY v. BELMORE et al.

SYLLABUS BY THE COURT.

1. Where on officer levies a writ of attachment on the property of a stranger, attachment plaintiff is liable to the claimant of the ownership and right of possession thereof, not only when he directs the wrongful levy, but also when he subsequently adopts or ratifies the officer's acts, independently of any bond and jointly with the attaching officer.

P. 317

2. A question, not jurisdictional, cannot be raised for the first time on appeal.    P. 318

3. After a verdict has been received and entered upon the minutes, and the jury has been dismissed, they have not the power to reassemble and alter their verdict.    P. 318

4. Where, from the record, it appears that attorney for appellant purposely and designedly permitted the court to reassemble the jury and correct the verdict, without objecting to such action, and thereafter sought to take advantage of the same, the appellate court will not consider such alleged error.

P. 319

Appeal from District Court, Quay County; T. D. Leib, Judge.

Action by G. L. Murry, guardian of Whitney B. Reid and others, against D. A. Belmore, Jr., and another. From judgment for plaintiff, defendant named appeals. Affirmed.

CATRON & CATRON of Santa Fe and H. L. BOON of Tucumcari, for appellants.

For rule relative to damages for injury to property, see: Jacksonville Ry. Co. v. Garrison, 11 So. 932; Wichita & C. Ry. Co. v. Gibbs, 27 Pac. 991; Thayer v. Eaton, 12 Atl. 879; Mitchell v. Mitchell et al., 61 N. W. 682; Cunningham v. Quirk, 26 Pac. 184; Pitt v. Kellogg, 11 N. Y. S. 526; Nixon v. Stilwell, 5 N. Y. S. 248; Farsworth v. Western U. Tel. Co., 6 N. Y. S. 735; Gulf, Colo. & Santa Fe Ry. Co. v. Jake Johnson, 1 L. R. A. 730; Page v. Town of Sumpter, 11 N. W. 60; C., M. & N. Ry. Co. v. Echman, 47 Ill. App. 156; Stevens v. McClure, 56 Ind. 384; Schnette v. Sutter, 23 Mo. 240.

The court erred in permitting the verdict of the jury to be corrected a day after same was rendered, and after the jury had been discharged.

Walters v. Junkins, 16 S. & R. (Pa.) 414; Sargent v. State, 11 Ohio, 472; Warner v. N. Y. R. R. Co., 52 N. Y. 437; Salinas v. Stillman, 25 Tex. 12; St. Clair v. Caldwell et al., 72 Ala. 527; see Lovells v. State, 32 Ark. 585-595; Paige v. O'Neal, 12 Cal. 483-494, 94 Cal. 379; see

authorities; Settle v. Allison et al., 8 Ga. 201; Williams et al. v. People, 44 Ill. 478; Warfield, Ex., v. Patterson, 135 Ill. App. 307; Rigg v. Cook, 46 Am. Dec. 462-473; Little v. Lanibee, 2 Me. 34; Ward v. Bailey, 23 Me. 316; State v. McBride, 18 Mo. 239; State v. Dawkins, 32 S. C. 17; Ellis v. State, 27 Tex. App. 190; Hills v. Commonwealth, 7 Leigh (Va.) 751.

HARRY H. McELROY of Tucumcari, for appellees.

Whether authorization is express or implied, person authorizing the doing of an act of trespass is liable.

38 Cyc. 1041; State v. Smith, 57 Am. R. 802; Wall v. Osborne, 12 Wend. 39; Cook v. Bank, 39 S. E. 434; Hamilton v. Hunt, 14 Ill. 472.

As to form of denials, see:

31 Cyc. 197; Montour v. Purdy, 11 Minn. 884, 88 Am. Dec. 88.

Each joint trespasser is liable for the whole injury, and damages must be assessed against all joint trespassers jointly.

38 Cyc. 1161.

As to right of contribution, see:

38 Cyc. 493; 9 Cyc. 804.

## OPINION OF THE COURT.

ROBERTS, C. J.—This action was instituted in the court below by G. L. Murry, as guardian of the minor heirs of Nellie B. Reid, deceased, against the appellant, Belmore, and one J. W. Dickey, not a party to this appeal, to recover damages for the wrongful removal of certain fixtures and improvements from a tract of land which said heirs inherited from their mother. The real estate in question had been purchased by Mrs. Reid from one Hamm, about one year prior to the alleged trespass. Hamm was indebted to the appellant, Belmore, who instituted suit against him, and caused an attachment to be

levied upon the dwelling house, barn, fences, and certain other improvements upon the land in question, which were later sold by virtue of such attachment proceedings. At the sale appellant purchased all the attached property, excepting the windmill and fixtures connected therewith, which were purchased by his co-defendant, Dickey. Belmore was notified by Murry (whether before or after the sale under the attachment proceedings does not definitely appear) prior to the removal of any of the said property that the real estate belonged to said minor heirs; that Mrs. Reid had purchased the same prior to the institution of the attachment proceedings, and had a deed therefor, which had been long since of record. Notwithstanding the notice so given, Belmore sold a part of the property so purchased by him to others and authorized the purchasers to remove the same from the premises, and removed other property himself. Dickey removed the windmill. Upon the trial of the case, appellant did not dispute the fact that the title to the property was vested in the appellee's wards at the time the attachment proceedings were instituted, and only attempted to litigate the value of the property and the amount thereof that he had removed. The jury returned a verdict against both defendants, in favor of plaintiff, in the sum of $375, we may assume, although the original verdict is not made a part of the record. The court received the verdict and discharged the jury. On the morning of the next day, the court called the jury into the box and stated that he had been advised by practically all the members of the jury that they did not intend to return a verdict against Dickey for any amount, but only intended to award a recovery against Belmore. The court thereupon asked each juror if such was his intention. Upon being advised in the affirmative, he stated that the verdict would be corrected by limiting the recovery against Belmore alone, which was done, and judgment entered accordingly.

While appellant has assigned many alleged errors, only two of the assignments are discussed, and those only will be considered.

[1] The first error relied upon is that the court erred in refusing to set aside the verdict of the jury for the reason that the verdict was excessive and not warranted by the evidence. Under this assignment appellant urges two propositions: First, that Belmore removed only a part of the property and caused only a part of the damage, to-wit, $40.50; and, second, that the Reid heirs owned only a three-fourths interest in the property removed from the premises, and are therefore entitled only to that proportionate part of the damages.

As to the first proposition, it is only necessary to say that appellant set in motion the agency which resulted in the damages accruing to appellee. He instituted the attachment proceedings and accepted the benefits from the sale of the property. The guardian had the election "to pursue jointly or severally against all who aided in, or who advised or procured, or accepted benefits resulting from, the trespass." Vandiver v. Pollak, 107 Ala. 547, 19 South. 180, 54 Am. St. Rep. 118. Here Belmore procured the attachment and caused the property to be sold and derived all the benefits from the sale, and was thereby rendered liable to respond to damages for the conversion of all the property sold, whether purchased by himself or others, and this regardless of the fact that appellee might, had he so elected, have proceeded against all others who participated in the wrongful transaction. Possibly the foregoing statement, to the effect that Belmore procured the property to be sold, may be going further than the evidence warrants; but whether he directed the constable to sell this particular property or not is wholly immaterial, because there is ample evidence of ratification by him of the acts of the constable in selling the property. It is not clear from the evidence whether Murry notified Belmore of his claim, on behalf of the children, to the property prior to the sale or after the sale; but it does appear that he was so notified before any of the property had been removed, and his answer to the notice was that he had been out a lot of money and was going to take the property. This action on his part, cou-

pled with his receipt and appropriation of the money derived from the sale to his own use, furnishes ample evidence of ratification on his part. In 4 Cyc. 764, it is said:

"Where an officer levies a writ of attachment on the property of a stranger, attachment plaintiff is liable to the claimant of the ownership and right of possession thereof not only when he directs the wrongful levy, but also when he subsequently adopts or ratifies the officer's acts, independently of any bond and jointly with the attaching officer."

In the case of Perrin v. Claflin, 11 Mo. 13, the court said:

"The doctrine of the common law is that the person who agrees to a trespass after it is done, where the trespass is done to his benefit or for his use, is a trespasser ab initio. His subsequent agreement is equivalent to a previous command."

There was ample evidence of ratification by Belmore of the acts of the constable, and, this being true, he was liable for the value of all the property sold under the attachment levy, whether purchased by him or others. Such being true, the only remaining question under this branch of the case is whether the evidence warranted the recovery of the amount awarded. There was evidence, which, if true, warranted a recovery of more than $500. Consequently there is no merit in this contention.

[2] It is sufficient answer to the second proposition urged to say that no such question was presented in the trial court. The record is silent as to any interest owned, or claimed, in or to the property by the father of the children named, or in fact that the father was still living, or survived his wife. It is well settled that a question, not jurisdictional, cannot be raised for the first time on appeal. Elliott on Appellate Procedure, § 470; State v. Padilla, 18 N. M. 573, 139 Pac. 143.

[3] The next assignment of error relied upon is that:

"The court erred in calling back to the jury box the jurymen who tried this case, and having then and there attempted to impeach and correct their verdict, on the day after said verdict had been returned and they had been discharged."

There was no evidence adduced upon the trial to connect the defendant Dickey with the alleged trespass, save the fact that he attended the sale of the attached property and purchased the windmill, valued at slightly over $10. He had nothing whatever to do with the sale or removal of the remainder of the property, and no connection whatever with Belmore. This being true, a joint verdict against Dickey and Belmore for the full value of all the property removed from the lands was not warranted by the evidence, and the court, upon proper application, would have set aside the verdict as to Dickey, as it had power to do. The verdict as to Belmore, however, was sustained by the facts proven. It is evident that the court realized that the verdict against Dickey was unwarranted by the evidence, and that it attempted to correct the same. It had no power to make this correction in the manner attempted. After a verdict has been received and entered upon the minutes, and the jury has been dismissed, they have not the power to reassemble and alter their verdict. Warner v. N. Y. Central R. R. Co., 52 N. Y. 437, 11 Am. Rep. 724; Walters v. Junkins, 16 Serg. & R. (Pa.) 414, 16 Am. Dec. 585; Sargent v. State, 11 Ohio, 472; Salinas v. Stillman, 25 Tex. 12.

[4] While the court erred in reassembling the jury and changing the verdict, yet appellant is precluded from taking advantage of the same, because of the conduct of his counsel. Mr. Hitson, one of the attorneys representing both defendants, was present in the courtroom when the judge called the jury into the box and began to interrogate them as to their intention in returning the verdict. When Mr. Hitson discovered what the court was about to do, he arose and left the courtroom. After the verdict had been corrected and the jury dismissed, he returned and objected to any change being made in the judgment. From the bill of exceptions it is apparent that he purposely refrained from calling the attention of the court to its want of power to change the verdict, and purposely and intentionally permitted such change to be made so that he would be in a position to force a new

trial for the defendant Belmore, because, after the verdict was changed, the judgment would be at variance with the same, unless it was also altered. Attorneys are officers of the court in arriving at a correct conclusion in matters of law and fact. They have no right to sit idly by and see error committed, affecting the interests of their client, without making an honest effort to avoid the error. Mr. Hitson should, when he apprehended the purposes of the court, have called the attention of the court to its lack of power, and, had he done so, doubtless the court would have found some legal method of correcting the injustice done Dickey, by the verdict returned. Certainly it would have had the power, upon proper application, to have set aside the verdict as to Dickey, and could have permitted it to stand as to Belmore. Instead of attempting to assist the court to arrive at a correct conclusion, and avoid error, the bill of exceptions shows that Hitson arose and left the courtroom and absented himself until assured that the court had taken such an action as he felt would compel the granting of a new trial as to Belmore. When satisfied that this result had been accomplished, he returned to the courtroom and attempted to make such a record as he felt would accomplish this result. Under such circumstances, and in view of the fact that the record shows that the verdict as to Belmore is amply sustained by the evidence, we will not notice this alleged error, and the judgment will be affirmed, and it is so ordered.

HANNA and PARKER, J.J., concur.