2006-NMSC-018

134 P.3d 737

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Conrado RODRIGUEZ, Defendant–Respondent.**

No. 28,867.

Supreme Court of New Mexico.

April 19, 2006.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Justice.

{1} It is undisputed in this case that, with respect to the DWI charge against Defendant, the jury foreman mistakenly signed the not guilty verdict form when the jury had unanimously found Defendant guilty. The error was reported to the bailiff by some of the jurors shortly after the trial judge announced that the jury was discharged. The question in this case is whether, having announced that the jury was discharged, the trial court could correct the verdict form to reflect the true verdict of the jury. The trial court corrected the error while the jury was still in its presence and control by polling each juror and confirming that none of them intended to acquit Defendant of DWI but, instead, that they had unanimously found him guilty of DWI. Defendant appealed the correction of the verdict form to the Court of Appeals arguing that double jeopardy precluded the correction. The Court of Appeals reversed the trial court holding that the verdict form could not be corrected because "even the slightest possibility of juror contamination should preclude reassembling the jury to inquire into the validity of its verdict," *State v. Rodriguez*, 2004–NMCA–125, ¶ 11, 136 N.M. 494, 100 P.3d 200, and the State failed to specifically rebut the presumption of prejudice that attached once the trial judge announced the jury was discharged. *Id.* ¶ 13. Because the jury remained together in the presence and control of the court and had not been subjected to outside influence or contamination, we hold that the trial court was entitled to correct the verdict form to reflect the true verdict of the jury. Therefore, there was no double jeopardy violation. The Court of Appeals is reversed and Defendant's conviction for DWI is reinstated.

## PROCEDURAL BACKGROUND

{2} Defendant was tried before a jury for DWI, driving on a suspended or revoked license, and concealing his identity from a police officer. After the jury concluded its deliberations, it returned to open court at 3:12 p.m. to announce its verdict. In accordance with local practice, the verdicts were handed to the court clerk to be read aloud and into the record. The clerk read that Defendant had been found guilty of driving on a suspended or revoked license and of concealing his identity, but not guilty of driving while intoxicated. After the prosecution and the defense declined to poll the jury, the record reflects the following:

THE COURT: All right. I'm going to discharge the jury. And thank you for working with us and for us today. Please call the Code–a–Phone over the weekend. Thank you.

THE BAILIFF: Please stand for the jury.

(Note: Jury out at 3:15 p.m.)

THE BAILIFF: One moment, Your Honor. I'm moving the jury back into the jury room. They're saying that a verdict was read wrong.

THE COURT: All right. That's fine.

THE BAILIFF: Let us see what's going on. Okay? I'll be right back with you in just a moment.

THE COURT: It was not read wrong.

THE BAILIFF: They were saying the DWI verdict was read wrong.

THE CLERK: I read what it says.

THE COURT: Let's have the verdict forms.

[DEFENSE COUNSEL]: And I thought I was a legal genius.

THE COURT: Please be seated. I'm thinking. All right. What I'm going to do—the jury is still intact. The Court is going to ask them to come back in. I'm, going to—

[PROSECUTOR]: Poll.

THE COURT:—show the verdict forms to the foreman. I'm going to ask him to read that and ask him if it is correct. We are going to have a poll—

[DEFENSE COUNSEL]: That's what I was going to suggest.

THE COURT:—of the jury.

At 3:20 p.m. the jury was brought back into open court from the adjacent jury room and all twelve jurors stated that the verdict read aloud announcing that Defendant was not guilty of DWI was not their verdict. The foreman stated that he had signed the not

guilty verdict form by mistake. The trial judge found that the mistake was clerical and entered the true verdict as guilty of DWI. The trial judge then polled the jury again, this time asking whether their verdict on DWI was guilty. The jurors each stated that their verdict was guilty of DWI.

## DISCUSSION

■ {3} Defendant appealed to the Court of Appeals contending that the trial court violated his right to be free from double jeopardy when it reassembled the jury to correct the verdict form. We generally review double jeopardy claims de novo. *City of Albuquerque v. One (1) 1984 White Chevy Ut.*, 2002–NMSC–014, ¶ 5, 132 N.M. 187, 46 P.3d 94; *State v. Reyes–Arreola*, 1999–NMCA–086, ¶ 5, 127 N.M. 528, 984 P.2d 775. However, where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review. *State v. Gonzales*, 2002–NMCA–071, ¶ 10, 132 N.M. 420, 49 P.3d 681. In doing so, we will not weigh the evidence or substitute our judgment for that of the trial court, *State v. Garcia*, 2005–NMSC–017, ¶ 12, 138 N.M. 1, 116 P.3d 72, and all reasonable inferences supporting the fact findings will be accepted even if some evidence may have supported a contrary finding. *State v. Bankert*, 117 N.M. 614, 618, 875 P.2d 370, 374 (1994). As discussed below, the double jeopardy analysis does involve fact issues.

{4} To decide whether the correction of the verdict form from not guilty to guilty violated Defendant's constitutional right to be free from double jeopardy, we must first determine whether the trial judge erred in reassembling the jury once he announced he was going to discharge the jury. As the Court of Appeals pointed out in its opinion, "[w]hether a trial court may reassemble a discharged jury to amend, clarify, or correct a verdict is the subject of a surprising number of cases throughout the country." *Rodriguez*, 2004–NMCA–125, ¶ 7, 136 N.M. 494, 100 P.3d 200. Some states categorically preclude the reassembly of a jury to correct a verdict once the trial judge announces his or her intent to discharge the jury. *See, e.g., West v. State*, 228 Ind. 431, 92 N.E.2d 852,

855 (1950). Other states analyze whether the jury was discharged by investigating whether the jury actually left the presence and control of the court. *See, e.g., State v. Brandenburg*, 38 N.J.Super. 561, 120 A.2d 59, 61 (Hudson County Ct.1956). In New Mexico, in a case where the jury was called back to the courtroom to correct a verdict one day after they were discharged, we stated that "[a]fter a verdict has been received and entered upon the minutes, and the jury has been dismissed, they have not the power to reassemble and alter their verdict." *Murry v. Belmore*, 21 N.M. 313, 319, 154 P. 705, 707 (1916). Despite this statement, we refused to set aside the corrected verdict because appellant's attorney "purposely refrained" from objecting to the reassembly of the jury in an apparent attempt to force a new trial for his client. *Id.* at 319–20, 154 P. at 707–08.

■ {5} What remains unanswered in New Mexico law is: when is a jury actually discharged? The Court of Appeals held that a functional approach to answering the question was consistent with New Mexico law. *Rodriguez*, 2004–NMCA–125, ¶ 13, 136 N.M. 494, 100 P.3d 200. We agree with the Court of Appeals on this point. The functional approach to determining whether a jury has been discharged requires a determination of whether the jury is still in the presence and control of the trial court, and if not, whether the jury was possibly influenced by an unauthorized contact. *See State v. Green*, 995 S.W.2d 591, 609–613 (Tenn.Crim.App.1998) (reviewing cases from several jurisdictions). We find the analysis in *Green* persuasive. In *Green*, the court held that a verbal discharge or dismissal of the jury does not render the jury discharged for purposes of subsequent reassembly to correct or amend a verdict. *Id.* at 609. Instead, the court considered two issues: (1) whether the jury was separated from the presence and control of the trial court; and (2) whether there was a possibility of outside contacts or influence on the jury. *Id.* at 612–13; *see also Commonwealth v. Brown*, 367 Mass. 24, 323 N.E.2d 902, 904–05 (1975) (holding reassembly permissible where jurors remained in control of the trial court by virtue of being in custody of court

officers and had no opportunity for outside influence). An important query on the second issue is whether the record reflects that one or more jurors entered an area occupied by the general public.

{6} In this case, although the Court of Appeals adopted the functional approach, it went further and presumed prejudice because, in its view, the record was silent with respect to whether any juror was contaminated by a bystander or court official. *Rodriguez*, 2004–NMCA–125, ¶¶ 11–13, 136 N.M. 494, 100 P.3d 200. The Court of Appeals would require the State to specifically rebut the presumption of prejudice. *Id.* ¶ 13. Presumably, the burden was on the State because the change to the verdict form favored the State. Implicit in its holding is that the State was obligated to present evidence that no juror was near a member of the general public; for example, providing testimony or a statement that members of the public were not in proximity to any juror. The Court of Appeals would also implicitly require proof that court officials themselves did not speak to any juror in an attempt to influence a change in the verdict. *Id.*

{7} Although we think it is reasonable to presume prejudice once a juror has left the presence and control of the court into an area occupied by the general public, we decline to presume prejudice when the judge is able to articulate a finding that the jury did not leave the court's presence and control and remained intact. In addition, because they are officers of the court, we decline to presume that court officials have contaminated a juror or the jury, although counsel are at liberty to raise the issue. In any event, the party who would benefit from the correction of the jury verdict form should be given an opportunity to rebut any presumption of prejudice.

{8} In this case, we believe the record is clear that the jury did not leave the presence and control of the court. Immediately after announcing that the jury was discharged, the trial court stated: "The court has been told by the bailiff, before you people exited, that the verdict had been read wrong as to count 1." The judge specifically found that the jury was intact. At a subsequent hearing regarding an appeal bond, the trial court judge reiterated his observations of the events. "[A]s the jury left—before they exited the Court, before they even left the jury room, the foreman of the jury informed the bailiff that the judge had misread the verdict, that [it] was not the correct verdict." It is undisputed that the only reason the jury was reassembled before they left the courtroom was to correct a jury verdict form that did not accurately reflect the result of the jury's deliberations.

{9} Had defense counsel or the prosecutor observed that a juror had left the court's presence and control or had been in contact with a member of the public between the reading of the verdict and its correction, it would have been incumbent on them to make their statement for the record. Instead, both parties seemed to be in agreement with the trial court that the jury remained intact and had not left the presence and control of the court. During the appeals bond hearing, the prosecutor stated:

> [T]he jury was exiting the room and actually hadn't even gone in to collect their items from the jury room when the bailiff who was also present, stopped and the Court and everyone else and said there's an error here, they claim an error and they were immediately brought back into the Court. They never left the courtroom itself proper totally, and I'm including the jury room in that, because it is sequestered from the rest of the building, so no tampering or any other type of (inaudible) may be given to those members and they were brought back in and immediately polled.

{10} Defense counsel has never disputed the statements for the record made by the judge or the prosecutor. At the same hearing where the prosecutor made his statements for the record, defense counsel commented as follows:

> Defense Counsel: I could find no case law except case law that went back to like 1873 that said that the jury had been discharged and were wandering about "gaily" I believe it said and then were called back.

District Judge: Well, our people, our people really didn't even get out of the chute.

Defense Counsel: Yeah.

District Judge: They were right there....

No doubt a better record of the proceedings might have been made. For example, the trial judge or either party could have made a more specific statement that the jurors, while leaving the jury box to return to the adjacent jury room to retrieve their personal items, alerted the court that a verdict had been incorrectly reported. Or, the trial judge or either party could have made a more specific statement that no juror had left the courtroom, jury room, or entered an area occupied by the general public. More specific statements would have made clear that the jury room was immediately adjacent to the courtroom and that the jurors were not entering the spectator section of the courtroom, and any disagreement by the parties could have been recorded. Alternatively, each juror could have been asked on the record whether he or she had left the courtroom or entered an area occupied by members of the general public and, if so, whether the juror or any member of the general public commented about the jury verdict. Finally, because of the events of this case, we encourage litigants to take advantage of the rule which permits either party or the court to poll the jury. Had the jury been polled immediately after the verdict was read in this case, we are confident the error with the verdict form would have been revealed even before the judge announced that he intended to discharge the jury.

{11} Although a better record might have been made, we believe the record in this case was adequate. Reviewing the record in the light most favorable to the trial court's findings, we are satisfied that the jury was not separated from the presence and control of the trial court and that no juror exited into an area occupied by the general public permitting the possibility of outside contacts or influence on the jury. Because no outside influence tainted the corrected verdict, we cannot find that entry of the jury's chosen verdict was barred by the constitution. For these reasons, the trial court is affirmed and the Court of Appeals is reversed.

{12} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.