This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                        **NO. 26,897**

**WILLIAM LAROCQUE**,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil C. Candelaria, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ROBLES, Judge.**

William Larocque (Defendant) appeals from a judgment and sentence of the district court following a jury trial where he was convicted of second-degree murder, armed robbery, conspiracy to commit armed robbery, tampering with evidence, and two counts of simple battery. On appeal, Defendant raises three issues: (1) sufficiency of the evidence; (2) ineffective assistance of counsel; and (3) double jeopardy. Having duly considered Defendant's arguments, we affirm in part, reverse in part, and remand to the district court.

## I.    BACKGROUND AND FACTS

Jennifer Pallulat was knocked to the ground at gunpoint, maced, and robbed of her pay check by a man outside of her workplace in Albuquerque. The robber fled on foot. Several of Pallulat's co-workers witnessed the robbery, and some of them chased the robber as he ran away.

Two of the pursuers, Casey Dominguez and Charles Dusing, were catching up to the robber. As they neared him, the robber turned and shot Dominguez in the chest, killing him. Dusing ceased pursuit of the robber to aid Dominguez. The robber continued running, joining another man who had evidently been waiting for him in a nearby arroyo. The two men ran away together. By one eyewitness account, they were laughing.

In the ensuing investigation, Pallulat and Dusing worked with police to develop sketches of the robber and the man in the arroyo. Pallulat and another witness, Larry Roche, later identified Defendant from a photo array as the robber. Dusing was unable to identify Defendant from a photo array, but stated at trial that Defendant was the man who shot Dominguez.

Defendant argued that this was a case of mistaken identity. In support of his theory, Defendant's family members testified that they believed he was at home during the time of the shooting. Defendant was convicted of second-degree murder, armed robbery, conspiracy to commit armed robbery, tampering with evidence, and two counts of simple battery. This appeal followed.

## II. SUFFICIENCY OF EVIDENCE

Defendant argues that insufficient evidence was presented at trial to uphold the verdict.

> Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt.

*State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted).

## A. Conspiracy to Commit Armed Robbery

To support a conviction for conspiracy to commit armed robbery, the State was required to show that Defendant knowingly combined with another to commit an armed robbery. UJI 14-2810 NMRA. At trial, the State presented evidence that, following the robbery, Defendant was joined by another man who appeared to have been waiting for him, and they ran away together, laughing.

The State contends this evidence alone is sufficient to show Defendant knowingly made an agreement with the man in the arroyo to rob someone. The State points out that all parties to a conspiracy need not be identified in order to sustain a conviction. *See State v. Gonzales*, 2008-NMCA-146, ¶ 11, 145 N.M. 110, 194 P.3d 725. We note that conspiracy is often shown through inference from the facts and circumstances considered as a whole. *State v. Ross*, 86 N.M. 212, 214, 521 P.2d 1161, 1163 (Ct. App. 1974).

Although a jury is able to determine, based upon circumstantial evidence, whether a mutual agreement was reached, the State presented no evidence that there was an agreement between the two men. *See State v. Sheets*, 96 N.M. 75, 78, 628 P.2d 320, 323 (Ct. App. 1981) (observing that where a "conspiracy conviction rests entirely upon circumstantial evidence[,] the question is whether the circumstances, shown by all of the evidence, are sufficient for a rational trier of fact to convict).

4

The record does not provide evidence of a mutual design. The evidence consists of only the other man's presence at a location some distance from the scene of the robbery and the two men's laughter as they ran away together. The State argues unsuccessfully that the other man's presence in the arroyo, and the fact that he fled with Defendant, shows beyond a reasonable doubt that the two men agreed to commit the robbery. This evidence is insufficient to prove beyond a reasonable doubt that the man in the arroyo was more than merely present, or that he did not just passively acquiesce to Defendant's actions. *See State v. Mariano R.*, 1997-NMCA-018, ¶ 4, 123 N.M. 121, 934 P.2d 315 (holding that passive acquiescence of others' conduct is insufficient to uphold a conviction for conspiracy); *State v. Dressel*, 85 N.M. 450, 451, 513 P.2d 187, 188 (Ct. App. 1973) (stating mere presence at the scene of the crime is insufficient to sustain conspiracy conviction).

We hold that the jury could not have rationally inferred from the other man's location and laughter that the two men knowingly combined to commit an armed robbery. Accordingly, we reverse Defendant's conviction for conspiracy to commit armed robbery.

**B.    Tampering With Evidence**

To prove that Defendant was guilty of the crime of tampering with evidence, the State was required to show beyond a reasonable doubt that Defendant destroyed

5

and/or hid a firearm intending to prevent his apprehension, prosecution, or conviction. UJI 14-2241 NMRA. At trial, the State presented evidence that Dominguez was shot with a .32 caliber weapon. The murder weapon was never recovered. In Defendant's home, police located a gun cleaning kit that was appropriately sized for a .32 caliber weapon.

*State v. Silva*, 2008-NMSC-051, ¶ 19, 144 N.M. 815, 192 P.3d 1192, requires a conviction for tampering with evidence to be overturned when the only evidence is that a weapon was used, and that the weapon was never recovered. Here, there is no evidence to support a finding that Defendant destroyed or hid a weapon with the intent to prevent his apprehension or prosecution.

Even viewing the evidence in the light most favorable to the verdict, we cannot say that each element of the crime is supported by substantial evidence. *See State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994) (holding that an appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict). We therefore reverse Defendant's conviction for tampering with evidence.

**C.    Second-Degree Murder, Armed Robbery, and Battery**

To sustain a conviction for second-degree murder, armed robbery, and two counts of battery, the State was required to prove beyond a reasonable doubt that

Defendant, without sufficient provocation, upon a sudden quarrel, or in the heat of passion, killed Dominguez without lawful justification or excuse, knowing his actions created a strong probability of death or great bodily harm; that Defendant intentionally and unlawfully touched or applied force to Pallulat in a rude, insolent, or angry manner; and that he stole something of value from Pallulat by use or threatened use of force or violence. UJI 14-210 NMRA (second-degree murder); UJI 14-1621 NMRA (armed robbery); UJI 14-320 NMRA (battery).

On appeal, Defendant does not argue the State failed to show that the above-listed crimes occurred. Rather, Defendant argues that the State did not sufficiently prove he was the individual who committed the crimes. Defendant argues that because the witnesses' descriptions of the robber varied, Defendant's photo was placed "dead center" in the photo array, and none of the witnesses reported seeing tattoos on the robber, there was no way for a rational fact finder to determine Defendant was the robber.

"The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789. We do not determine on appeal whether the jury could have reached a different decision, only

whether substantial evidence supports the verdict. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

Defendant was positively identified by three separate witnesses as the robber. We recognize that the eyewitness descriptions of the robber varied and that one witness, Dusing, was unable to identify Defendant as the robber from the photo array. We are also aware that none of the eyewitnesses reported seeing tattoos on the attacker's arms, and that Defendant's arms are tattooed. However, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998).

It is the province of the jury to determine the credibility of the evidence presented, and we will not disturb the jury's verdict so long as substantial evidence was presented at trial to support the conclusion. *See Ernesto M.*, 1996-NMCA-039, ¶ 15. We affirm Defendant's convictions for armed robbery, second-degree murder, and two counts of battery.

**III.    INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant argues on appeal that defense counsel was deficient for failing to seek suppression of photo array identifications and for failing to request a jury instruction related to eyewitness identifications.

> To establish a prima facie case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient in that it "fell below an objective standard of reasonableness"; and (2) that [the d]efendant suffered prejudice in that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (quoting *Lytle v. Jordan*, 2001-NMSC-016, ¶¶ 26-27, 130 N.M. 198, 22 P.3d 666).

## A. Photo Identification

Defendant argues that defense counsel was under obligation to attempt to suppress the validity of the eyewitnesses' identification pursuant to *State v. Padilla*, 1996-NMCA-072, ¶¶ 21-22, 122 N.M. 92, 920 P.2d 1046 (suggesting that effective counsel would have moved to suppress a questionable show-up identification). *Padilla* involved a show-up identification where police drove up to the eyewitness with the defendant in the back of a police car. *Id.* ¶ 21. At trial, the witness could not identify the defendant as the man he had seen. *Id.* ¶ 22. We do not find *Padilla* to be convincing in light of the circumstances of the case before us.

Here, Defendant was identified by two separate witnesses from the photo array. The witnesses' descriptions of the robber included descriptions of both Caucasian and Hispanic individuals, and both Caucasian and Hispanic individuals were in the array from which the witnesses' identifications were made. The officer who compiled the

array testified that he chose pictures based on skin tone, facial hair, and facial features, rather than racial make-up. Defendant does not directly or expressly attack the photo array itself as being impermissibly suggestive. *See State v. Stampley*, 1999-NMSC-027, ¶ 17, 127 N.M. 426, 982 P.2d 477 (determining that a photo array was not impermissibly suggestive where the subjects were the same age, race, and stature, and there was nothing to suggest that differences in posture, clothing, and body build were impermissibly suggestive). We perceive no basis on which Defendant can complain about the identifications made based on the individuals in the array or the position of Defendant in relation to the others.

Defense counsel thoroughly cross-examined the officer who compiled the photo array and the witnesses who identified Defendant. The record shows defense counsel was well aware of any possible deficiencies in the identification process and chose to address them by cross-examining the witnesses and the officer who compiled the photo array. For this reason and because Defendant fails to set out any arguable basis on which he could have prevailed on a motion to suppress the identifications made after viewing the photo array, we reject Defendant's implicit arguments that his counsel was not competent and had no perceivable trial strategy or tactic on which to base his failure to seek suppression of the identifications. "On appeal, we will not

second guess the trial strategy and tactics of the defense counsel." *Lytle*, 2001-NMSC-016, ¶ 43 (internal quotation marks and citation omitted).

We determine that Defendant has not established a prima facie case of ineffective assistance of counsel. Therefore, we need not address whether, but for counsel's performance, the result of the proceeding would have been different.

**B.    Jury Instructions**

Defendant argues that he received ineffective assistance of counsel because his trial attorney failed to request specific instructions regarding the validity of eyewitness identifications. Defendant argues convincingly on appeal that, in eyewitness identification cases, judicial guidance to the jury regarding eyewitness identification is warranted. However, as Defendant points out, courts do not universally recognize the need for specific instructions regarding eyewitness identifications. New Mexico does not require such instructions. *See State v. Gallegos*, 115 N.M. 458, 460, 853 P.2d 160, 162 (Ct. App. 1993) ("New Mexico appellate courts have held that the uniform jury instructions on witness credibility and reasonable doubt cover a defendant's theory of misidentification by an eyewitness."). Indeed, this Court has concluded that a trial court does not err in refusing to give a jury instruction regarding eyewitness identification. *State v. Haynes*, 2000-NMCA-060, ¶ 23, 129 N.M. 304, 6 P.3d 1026.

Based upon our existing law regarding eyewitness identification, we do not see that the defense counsel erred in failing to request a jury instruction specific to eyewitness testimony. Defense counsel fairly and zealously represented Defendant at trial and repeatedly called attention to the variations in the testimony of the witnesses. The jury was given the Uniform Jury Instructions regarding witness credibility and reasonable doubt. Defendant has not demonstrated that defense counsel's performance fell below that of a reasonably competent attorney. We determine that Defendant has not established a prima facie case of ineffective assistance of counsel.

## IV.    DOUBLE JEOPARDY

Defendant asserts on appeal that his two convictions for simple battery violate the prohibition against double jeopardy. We review the constitutional question of whether there has been a double jeopardy violation de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. We note, however, that where factual issues are intertwined with the double jeopardy analysis, the trial court's factual determinations are subject to a deferential substantial evidence standard of review. *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

Defendant argues double jeopardy was violated because he was charged with multiple violations of the same statute based upon a single course of conduct. *See*

*State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (holding that there are two types of double jeopardy cases with regard to multiple punishments: (1) when a defendant is charged with multiple violations of the same statute based on a single course of conduct referred to as "unit of prosecution" cases; and (2) when a defendant is charged with violations of multiple statutes for the same conduct referred to as "double-description" cases. (internal quotation marks and citation omitted)). A unit of prosecution challenge uses a two-step inquiry. First, we ask whether the unit of prosecution is clearly defined by the statute at issue and, second, whether the charged acts were sufficiently distinct. *State v. Stewart*, 2005-NMCA-126, ¶ 13, 138 N.M. 500, 122 P.3d 1269.

Whether a unit of prosecution is clearly defined in NMSA 1978, Section 30-3-4 (1963) is not at issue, the relevant inquiry is whether Defendant's acts were sufficiently distinct to warrant two counts of battery. To determine whether criminal conduct consists of multiple offenses, we look at six factors: (1) temporal proximity of the acts, (2) location of the victim during each act, (3) existence of an intervening event, (4) sequencing of the acts, (5) the defendant's intent, and (6) the number of victims. *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991).

Defendant was convicted of two counts of battery for striking Pallulat in the chest and spraying her with mace. Several factors weigh in favor of Defendant's

argument. The acts occurred in quick succession, and there was only one victim. The two actions were close together in space and time. However, we hold the actions are sufficiently separate and distinct in nature to constitute separate crimes. *See State v. Bernal*, 2006-NMSC-050, ¶¶ 20-21, 140 N.M. 644, 146 P.3d 289 (holding that separate robberies occurred where there were two victims who suffered separate and distinct harms despite the defendant's single intent); *see also Stewart*, 2005-NMCA-126, ¶¶ 15-20 (upholding convictions for two separate counts of battery against a household member where there was little significant change in location, but an assault on another individual was an intervening event such that the jury could have found independent factual bases for the charged offenses).

The testimony showed Defendant clearly intended to hit Pallulat and also to spray her with mace. Pallulat suffered two distinct harms. When she was punched in the chest, she fell to the ground. When she was sprayed with mace, her eyes and face burned. In this case, Defendant's use of a weapon—mace—constitutes an intervening event. Although Pallulat did not move significantly, she did fall to the ground. While this Court has held even prolonged batteries to be one continuous act, *i.e.*, *State v. Mares*, 112 N.M. 193, 199-200, 812 P.2d 1341, 1347-48 (Ct. App. 1991), Defendant's use of mace renders the second battery sufficiently distinct to support separate convictions. *See State v. Cooper*, 1997-NMSC-058, ¶¶ 61-62, 124 N.M. 277, 949

P.2d 660 (holding that the use of different weapons supports a finding of discrete acts). We affirm the convictions for two separate charges of battery.

## V. CONCLUSION

Based on the foregoing, we reverse Defendant's convictions for conspiracy to commit armed robbery and tampering with evidence; affirm the convictions for two counts of battery, second-degree murder, and armed robbery; and remand to the district court for resentencing.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**