This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                              **No. A-1-CA-35458**

**LEROY LINDSEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O' Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}     Defendant Leroy Lindsey appeals from the district court's judgment, entered pursuant to a jury verdict for three counts of reckless child abuse, one count of

1

aggravated battery, and one count of resisting an officer. Defendant argues that: (1) there was insufficient evidence to support any of his convictions, (2) his convictions for three counts of child abuse violated his constitutional right to be free from double jeopardy, (3) the district court failed to vacate his convictions for alternative Counts 1 and 4 after merging them for sentencing, and (4) instructional error mandates reversal of his convictions for negligent child abuse, as it resulted in fundamental error. We reject the bulk of Defendant's arguments and affirm his convictions. However, we agree that the district court inadvertently failed to vacate the alternative counts in Counts 1 and 4 and remand with instructions to do so.

**BACKGROUND**

{2}      On February 21, 2014, at 3:00 a.m., Defendant Leroy Lindsey, his sister, and his sister's boyfriend were staying in the trailer home of Samantha G. At some point during the night, Defendant broke into the bedroom where Samantha and her two daughters were sleeping. A.S. and S.S. were ten and eight years old, respectively. Samantha was sleeping on the bed with S.S. and A.S. slept on blankets on the floor. Defendant forcibly entered the bedroom and attacked Samantha, beating her about the head and body with his fists and falling on her, while the children watched. Both of the children attempted to stop Defendant's attack on Samantha; A.S., by yelling and trying to call the police and S.S. by yelling for Defendant to stop. Defendant's sister also came into the bedroom and

attempted to stop Defendant's attack on Samantha. After ending his attack in the bedroom, Defendant went to the kitchen and got a knife.

{3}     After Defendant left the bedroom, Samantha, A.S., and S.S. ran to their bathroom in a different location in the trailer. Defendant returned with a knife and cornered his victims in the bathroom. Defendant began his second attack by stabbing Samantha in the arm with such force that the blade penetrated both her arm and chest cavity, puncturing her lung. Defendant then turned his attention to A.S.

{4}     A.S., who was in her mother's arms, yelled at Defendant to get away from her mother and threw her phone at Defendant's face. Defendant then stabbed A.S. in the right side of her face with the knife, breaking the blade from the handle. The force of the blow embedded the blade in A.S.'s head from her right ear, down through her tongue, to just below the left side of her jawbone. While the attack was taking place, S.S. was curled in a ball on top of the washing machine. She saw blood coming from both her mother and sister, and saw blood on the floor of the bathroom.

{5}     After a jury trial, Defendant was found guilty on five counts: Count 1, child abuse (recklessly caused-torture, cruel confinement or cruel punishment) (great bodily harm), pursuant to NMSA 1978, Section 30-6-1(D), as against A.S.; Count 2, child abuse (recklessly caused) (no great bodily harm), pursuant to NMSA 1978, Section 30-6-1-(D), as against A.S.; Count 3, child abuse (recklessly caused) (no

great bodily harm), pursuant to NMSA 1978, Section 30-6-1-(D), as against S.S.; Count 4, aggravated battery (deadly weapon), pursuant to NMSA 1978, Section 30-3-5 (A) and (C), as against Samantha G.; and, Count 6, resisting, evading or obstructing an officer, pursuant to NMSA 1978, Section 30-22-1. This appeal followed.

**DISCUSSION**

**I.      Sufficiency of the Evidence**

{6}      "The sufficiency of the evidence is reviewed pursuant to a substantial evidence standard." *State v. Treadway*, 2006-NMSC-008, ¶ 7, 139 N.M. 167, 130 P.3d 746. When reviewing a challenge to the sufficiency of the evidence, we determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "In that light, the Court determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the

evidence is to be measured." *Id.* (alterations, internal quotation marks, and citation omitted).

{7}     Defendant asserts there was insufficient evidence to support all of his convictions. However, Defendant only presents arguments regarding the insufficiency of the evidence as to his Count 3 conviction: reckless endangerment of S.S. Therefore, we will only consider Defendant's argument as to Count 3. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments which require us to guess at what [a party's] arguments might be"). Defendant argues the elements instruction for Count 3 required the jury to find that Defendant attacked Samantha and A.S. in S.S.'s "presence" and that the attack caused S.S. to be placed in a situation that "endangered [her] life or health." We disagree.

{8}     To convict Defendant of child abuse not resulting in death or great bodily harm, the jury was instructed that it had to find beyond a reasonable doubt that: (1) Defendant attacked Samantha and A.S. in S.S.'s presence; (2) the attack caused S.S. to be placed in a situation that endangered her life or health; (3) Defendant showed reckless disregard for the safety or health of S.S.; (4) Defendant caused a substantial and unjustifiable risk of serious harm to the safety or health of S.S.; and (5) such a risk is one that any law-abiding person would recognize and behave differently than Defendant did out of concern for the safety and health of S.S.. *See* UJI 14-612 NMRA. Relying on *State v. Trujillo*, 2002-NMCA-100, ¶¶ 19, 20, 132

N.M. 649, 53 P.3d 909, Defendant argues that there was no evidence that S.S. was endangered specifically, as she was not in the zone or line of physical danger from the knife attack. Defendant's reliance on *Trujillo* is misplaced.

{9}     In *Trujillo*, the child did not witness the commencement of the attack on the child's mother. After coming to the bedroom door and seeing her father hit her mother, the child returned to her bedroom. *Id.* ¶ 4-5. The attack was directed at the child's mother, and the "[d]aughter was never placed in the line of physical danger." *Id.* ¶ 19 (noting that the attack was directed at the child's mother and the defendant made the child leave the room, placing the child outside the direct line of danger).

{10}     The State established that Defendant cornered his three victims in the bathroom, brutally stabbed Samantha and A.S., all while S.S. watched the attack from close proximity. And while curled in a ball on the washing machine in the bathroom, S.S. observed blood coming from both victims of the knife attack and falling on the bathroom floor. The proximity of these attacks to S.S. is sufficient evidence upon which a jury could conclude that Defendant recklessly and unjustifiably caused the life or health of S.S. to be endangered. *See State v. Granillo*, 2016-NMCA-094, ¶ 12, 384 P.3d 1121(holding that "[a]buse by endangerment is a special class of child abuse designed to punish conduct that exposes a child to a significant *risk* of harm," regardless of physical injury to child (internal quotation marks and citation omitted)); *see also State v. Arrendondo*,

2012-NMSC-013, ¶ 25, 278 P.3d 517 (noting that recklessness causing a foreseeable risk may be proven with evidence that "the defendant was or should have been aware that the child was present within the zone of danger").

## II. Double Jeopardy

{11} The appellate courts "generally review double jeopardy claims de novo." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737; *see also State v. Saiz*, 2008-NMSC-048, ¶ 22, 144 N.M. 663, 191 P.3d 521 ("Double jeopardy presents a question of law, which [the appellate courts] review de novo."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783. "The constitutional prohibition against double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v. Armijo*, 2005-NMCA-010, ¶ 15, 136 N.M. 723, 104 P.3d 1114 (internal quotation marks and citation omitted); *see also* U.S. Const. amends. V, XIV; N.M. Const. art. II, § 15.

## A. Defendant's Convictions for Child Abuse in Count 1 and Count 2 Do Not Violate Double Jeopardy

{12} Defendant argues two theories regarding the application of double jeopardy as to Counts 1 and 2. Defendant maintains that: (1) A.S.'s child abuse not resulting in great bodily harm is a necessarily included offense of A.S.'s child abuse resulting in great bodily harm, and (2) the stabbing of Samantha, while A.S. was in her arms, cannot serve as reckless endangerment of A.S., as the precedent stabbing and the subsequent reckless endangerment was a unitary act. Under both

arguments, Defendant contends that his conviction for child abuse not resulting in great bodily harm is predicated upon the stabbing of Samantha and A.S. in the bathroom, and therefore, unitary conduct. We reject Defendant's arguments because Defendant's conviction under Count 2 is based upon Defendant's discrete and distinct reckless endangerment of A.S. that occurred in the bedroom when he first attacked Samantha, as A.S. yelled at him to stop and tried to call the police.

{13}     Our analysis begins with an examination of the contours of unitary conduct. As our Supreme Court observed, "[u]nitary conduct is often defined by what it is not. Thus, conduct is not unitary if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness." *State v. Cooper*, 1997-NMSC-058, ¶ 59, 124 N.M. 277, 949 P.2d 660 (internal quotation marks and citation omitted). In analyzing the contours of the "indicia of distinctness" our courts are to consider "the separation between the illegal acts by either time or physical distance, the quality and nature of the individual acts, and the objectives and results of each act." *Id*. (internal quotation marks and citation omitted). Distinctness may also be established by the "existence of an intervening event[,]. . .[the] defendant's intent as evidenced by his conduct and utterances[,]. . .[the] number of victims," and "the behavior of the defendant between [acts.]" *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624.

{14}    To convict Defendant of Count 2, the jury was instructed it had to find beyond a reasonable doubt that: (1) Defendant attacked Samantha in A.S.'s presence; (2) the attack caused A.S. to be placed in a situation that endangered her life or health; (3) Defendant showed reckless disregard for the safety or health of A.S.; (4) Defendant caused a substantial and unjustifiable risk of serious harm to the safety or health of A.S.; and (5) such a risk is one that any law-abiding person would recognize and behave differently than Defendant did out of concern for the safety and health of A.S.

{15}    Conversely, to convict Defendant of Count 1, the jury was instructed it had to find beyond a reasonable doubt that: (1) "[Defendant] stabbed [A.S.] in the head with a knife;" and (2) "[Defendant] caused [A.S.] to be tortured, or cruelly confined, or cruelly punished[.]"

{16}    "First, we examine whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges. If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." *State v. Bernal*, 2006-NMSC-050, ¶ 9, 140 N.M. 644, 146 P.3d 289 (citation omitted). Defendant argues that "the jury could have employed and likely did employ the same facts—[Defendant] stabbing [A.S.] in the course of his attack on her mother—to underwrite convictions for both Count[] 1 and Count 2." We are unpersuaded.

{17} In closing argument to the jury, the State argued that Defendant's discreet acts of recklessly endangering A.S. were perpetrated in the bedroom as opposed to the bathroom. The evidence established that A.S. was awakened to find "[D]efendant on top of her mother, punching her[,]" and, "[h]e leaves the bedroom to go get a knife. All of that right there places [A.S.] in a situation that is endangering her life or her health." "[W]e look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted[.]" *State v. Sena*, 2018-NMCA-037, ¶ 43, 419 P.3d 1240, *cert. granted*, 2018-NMCERT-___ (Nos. S-1-SC-36932 & S-1-SC-36933 (consolidated), May 25, 2018); *see also State v. Montoya*, 2011-NMCA-074, ¶ 43, 150 N.M. 415, 259 P.3d 820 (observing that the state can avoid double jeopardy violations by identifying specific, non-unitary conduct in jury instructions). As noted above, our review of the trial transcript reveals that the State specifically communicated its theory to the jury that A.S. was recklessly endangered in the bedroom as opposed to the bathroom. The attacks on Samantha in the bedroom and bathroom were separated by time and location. As was the quality and nature of the distinct attacks. We conclude that Defendant's conduct in the bedroom was separate and distinct from that of the bathroom, not unitary, and therefore his conviction in Count 2 does not violate Defendant's double jeopardy protections. *See State v. Sotelo*, 2013-NMCA-028, ¶ 18, 296 P.3d 1232 ("Independent factual bases may be established by determining whether the acts constituting the two offenses are sufficiently

separated by time or space, looking to the quality and nature of the acts, the objects and results involved, and the defendant's mens rea and goals during each act." (internal quotation marks and citation omitted)).

**B.    Defendant's Convictions for Child Abuse in Count 2 and Count 3 Do Not    Violate Double Jeopardy**

{18}    Next, Defendant argues his two child abuse convictions, one as against A.S. and one as against S.S., offend his double jeopardy rights as they are predicated upon a single course of conduct: Defendant's attack on Samantha in the bathroom. As noted above, Defendant's conviction for the reckless endangerment of A.S., in Count 2, was predicated upon Defendant's conduct that occurred in the bedroom. To the contrary, Defendant's conviction for reckless endangerment of S.S. was predicated upon Defendant's knife attack upon Samantha and A.S. in the bathroom.

{19}    In closing argument to the jury, the State argued that Defendant's discreet acts of reckless endangerment against S.S. were perpetrated in the bathroom: "if the knife had not broken off inside of her daughter's head . . . they don't know what would have happened. [The attack] might have kept going. This is a situation that [S.S.] is watching." And that Defendant "attacked [mother] or [A.S.] in [S.S.'s] presence[,]" and, "[S.S. is] watching a man repeatedly hit her mother, hit her sister, then stabbing both of them." We conclude that Defendant's conduct toward S.S. in the bathroom was separate and distinct from that of Defendant's

conduct toward A.S. in the bedroom, not unitary, and therefore his conviction in Count 3 does not violate Defendant's double jeopardy protections. *See id.*

**Defendant's Convictions for Alternative Counts 1 and 4 Must Be Vacated**

{20}    In regard to Defendant's convictions on the "merged" alternative counts in Count 1 and Count 4, the same reasoning under double jeopardy applies. The Defendant argues that the alternative counts were not vacated. The State did not respond to the argument. Our review of the judgment and sentence does not reveal that the alternative counts were vacated. Although the district court correctly merged the respective alternative counts in Count 1 and Count 4, and did not sentence Defendant on those counts, it inadvertently failed to vacate the alternate convictions. The alternative counts in Count 1 and Count 4 must be vacated. *See State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[C]oncurrent sentencing does not adequately remedy the imposition of impermissible multiple punishments for a single offense; double jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."); *see also State v. Garcia,* 2011-NMSC-003, ¶ 39, 149 N.M. 185, 246 P.3d 1057 (holding that conviction of two crimes for the same offense requires the trial court to vacate the merged crime to avoid double jeopardy).

## III. The District Court Did Not Commit Fundamental Error In Instructing the Jury

{21} Defendant challenges his convictions for child abuse by reckless endangerment in Counts 2 and 3 based on the jury instructions given by the district court. Defendant argues that although the submitted jury instruction conforms to the newly adopted uniform jury instruction for child abuse by reckless endangerment, UJI 14-612 NMRA (effective April 3, 2015), the instruction incorrectly defined the mens rea that our Supreme Court announced in *State v. Consaul*, 2014-NMSC-030, ¶¶ 37-40, 332 P.3d 850. The State argues that Defendant's claim of instructional error is one of partial definitional error, *see State v. Allen*, 2000-NMSC-002, ¶ 76, 128 N.M. 482, 994 P.2d 728, and that this Court should not overrule uniform jury instructions that have been considered by our New Mexico Supreme Court in actual cases. We agree.

{22} We are persuaded that we can provide no remedy to Defendant, as we are precluded from overruling instructions our Supreme Court has considered in actual cases, and our Supreme Court has ruled on UJI 14-612 in a challenge made in an actual case. *See State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175 (holding that this Court can review the validity of uniform jury instructions and is precluded only from overruling instructions that our Supreme Court has considered in actual cases). In *State v. Montoya*, 2015-NMSC-010, ¶ 32, 345 P.3d 1056, our Supreme Court addressed the newly adopted UJI for reckless child abuse under *Consaul* and used language suggesting that the UJI "clearly define[s]

reckless . . . conduct" within the meaning and intention of *Consaul*. We therefore reject Defendant's argument that the district court committed instructional or fundamental error when it failed to include in its instruction to the jury a subjective test that Defendant "consciously disregarded a substantial risk" of harm. We also decline an invitation to transfer or certify this case to our Supreme Court based on this unpreserved issue, because the level of Defendant's consciousness was not an element actually taken away from the jury under the facts of this case.

**CONCLUSION**

{23}     We affirm all of Defendant's convictions. We further direct the district court to vacate Defendant's convictions for the alternative counts in Counts 1 and 4.

{24}     **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**JULIE J. VARGAS, Judge**